STATE of Iowa, Appellee,

v.

Marlys Ann BROOKS, Appellant.

No. 95–1989.

Supreme Court of Iowa.

Oct. 23, 1996.

Linda Del Gallo, State Appellate Defender, and John P. Messina, Assistant State Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Martha E. Boesen, Assistant Attorney General, and Ray Lough, County Attorney, for appellee.

Considered by HARRIS, P.J., and CARTER, LAVORATO, SNELL, and TERNUS, JJ.

TERNUS, Justice.

Defendant, Marlys Brooks, prepared a backdated check on her employer's account in an amount not authorized by her employer. She did so in an effort to conceal an earlier theft of funds. Brooks subsequently pleaded guilty to one count of forgery in violation of Iowa Code section 715A.2(1)(b) (1993). She now claims her trial counsel was ineffective in allowing her to plead guilty because there was no factual basis for the forgery charge. Brooks asserts she could not be found guilty of forgery based on making "a writing so that it purports to be the act of another who did not authorize that act." *See* Iowa Code § 715A.2(1)(b). That is because she was authorized to write checks on her employer's account, albeit not for the purpose or amount of the backdated check. She also claims the facts do not support her plea to forgery under the backdating alternative of the forgery statute because her act of backdating was not done "with intent to defraud or injure anyone." *See id.* § 715A.2(1). We conclude there was a factual basis for Brooks' guilty plea to forgery under the act-of-another alternative. Therefore, we affirm.

## I. *Background Facts and Proceedings.*

Brooks was the accounts payable clerk for Benco Corporation in Belle Plaine, Iowa. One of her duties was to issue garnishment checks. Typically, Benco would receive a notice from the Benton County sheriff's office of those Benco employees whose paychecks were to be garnished. Brooks would then prepare a separate check for each employee's garnished wages in the amount of the garnishment, have it signed by Benco's general manager, and send it to the sheriff's department. The sheriff would apply the check to satisfy the employee's garnishment. Brooks was one of the Benco employees whose paycheck was subject to garnishment.

On December 30, 1994, Brooks prepared a garnishment check in the amount of $187.14 representing funds deducted from the wages of another Benco employee. The general manager signed the check and Brooks delivered it to the sheriff's office. Rather than having the other employee's garnishment account credited with this payment, however, Brooks instructed the sheriff's office to credit *her* garnishment account instead. The other significant event occurring in December 1994 was the failure of three other garnishment checks written on Benco's account to arrive at the sheriff's office. The record does not reveal the fate of these checks.

On January 11, 1995, Brooks wrote three checks ostensibly to replace the three missing checks.[1] Two of the reissued checks were in the same amount as two of the original, missing checks. The third reissued check, however, was written in an amount $187.14 in excess of the original amount. This check would presumably cover the missing check as well as the monies diverted by Brooks to her garnishment account on December 30. The check was backdated to December 11, 1994. The backdating would make it appear the other Benco employee's December garnishment had been paid in a timely manner. The effect of this series of transactions was that Brooks' Benton County garnishment account was credited with $187.14 taken from her employer rather than from Brooks' wages. Brooks was not authorized to issue the backdated checks.

Based on Brooks' issuance of the third check, the county attorney charged her with felony forgery in violation of Iowa Code section 715A.2(1)(b):

> 1. A person is guilty of forgery if, with intent to defraud or injure anyone, or with knowledge that the person is facilitating a fraud or injury to be perpetrated by anyone, the person does any of the following:
>
> . . . .
>
> *b.* Makes, completes, executes, authenticates, issues, or transfers a writing so that it purports to be the act of another who did not authorize the act, or so that it

---

1. Although the record indicates the general manager did not sign these checks, it is unclear whether Brooks signed these checks in her own name or signed the general manager's name.

purports to have been executed at a time or place or in a numbered sequence other than was in fact the case....

*See* Iowa Code § 715A.2(2)(a) (making forgery of a check "which ostensibly evidences an obligation of the person who has purportedly executed it or authorized its execution" a class "D" felony). Brooks pleaded guilty to the forgery charge in return for dismissal of a theft charge and a fraudulent practices charge that had also been filed against her. *See* Iowa Code §§ 714.1, .12.

During the plea colloquy, the judge asked the attorneys if a factual basis existed for the forgery charge and both attorneys agreed it did. The judge asked whether it was true Brooks had no authority from Benco or anyone else to issue a replacement check on her own. Brooks responded, "Correct." The judge asked Brooks if she had prepared the check "with the intent to facilitate" the fraud; she said, "yes."

The district judge accepted Brooks' guilty plea and explained to her how and within what time she needed to file a motion in arrest of judgment; she did not file such a motion. Brooks was later sentenced to an indeterminate term of incarceration not to exceed five years and was ordered to make restitution. She now appeals, claiming there was no factual basis for her guilty plea to the offense of forgery.

## II.  *Scope and Standard of Review.*

■ Brooks claims she was denied her sixth amendment right to counsel because her attorney was ineffective. *See Taylor v. State*, 352 N.W.2d 683, 684–85 (Iowa 1984). We review this constitutional claim de novo. *State v. Spurgeon*, 533 N.W.2d 218, 219 (Iowa 1995).

## III.  *Ineffective Assistance of Counsel.*

■ Brooks' failure to move in arrest of judgment bars a direct appeal of her conviction. Iowa R.Crim.P. 23(3)(a). Nevertheless, this failure will not bar a challenge to a guilty plea if the failure to file a motion in arrest of judgment resulted from the ineffective assistance of counsel. *State v. Schoelerman*, 315 N.W.2d 67, 71 (Iowa 1982).

To succeed with her claim of ineffective assistance of counsel, Brooks must prove two elements. *See State v. Terry*, 544 N.W.2d 449, 453 (Iowa 1996). First, she must show that her counsel failed to perform an essential duty. *Id.* Second, she must prove she was prejudiced by counsel's error. *Id.* We can affirm on appeal if either element is lacking. *Id.*

■ We will find counsel failed to perform an essential duty if defense counsel allows the defendant to plead guilty to a charge for which no factual basis exists and thereafter fails to file a motion in arrest of judgment challenging the plea. *See State v. Hack*, 545 N.W.2d 262, 263 (Iowa 1996); *Schoelerman*, 315 N.W.2d at 73, 75; *accord State v. Washington*, 491 So.2d 1337, 1339 (La.1986). On the other hand, where a factual basis exists for the plea, counsel usually will not be found ineffective for allowing the defendant to plead guilty. *See, e.g., Morgan v. State*, 582 P.2d 1017, 1022 (Alaska 1978) (where ample evidence supports reindictment and counsel obtained significant concessions from the prosecution in return for guilty plea, no ineffective assistance of counsel claim will lie); *Commonwealth v. Stokes*, 264 Pa.Super. 515, 400 A.2d 204, 207 (1979) ("Because there was a factual basis for entering a plea of guilty to the charge of conspiracy, appellant's counsel was not ineffective for failing to suggest otherwise."); *State v. Garcia*, 115 Wash.2d 1010, 797 P.2d 511 (no ineffective assistance of counsel claim where factual basis existed and no evidence of mitigating defenses apparent), *review denied*, 57 Wash.App. 927, 791 P.2d 244 (Wash.1990); *see also* Gregory J. Sarno, Annotation, *Adequacy of Defense Counsel's Representation of Criminal Client Regarding Guilty Pleas*, 10 A.L.R.4th 8, 102–03 (1981). Thus, the pivotal issue in this case is whether a factual basis existed for Brooks' guilty plea to the crime of forgery under either of the alternatives charged. If a factual basis existed, counsel was not ineffective for failing to file a motion in arrest of judgment; if a factual basis does not exist, then counsel was ineffective.

■ In determining whether a factual basis for Brooks' guilty plea exists, we consider the entire record before the district court.

*See Hack,* 545 N.W.2d at 263 (examining minutes of testimony). This record includes any statements made by Brooks during the plea colloquy. *State v. Millsap,* 403 N.W.2d 56, 58 (Iowa App.1987).

IV. *Factual Basis For Act–of–Another Alternative of Forgery.*

■ A person is guilty of forgery under Iowa law

> if, with intent to defraud or injure anyone, or with knowledge that the person is facilitating a fraud or injury to be perpetrated by anyone, the person ... makes ... a writing so that it purports to be the act of another who did not authorize that act.

Iowa Code § 715A.2(1)(b). Brooks argues that because she was the accounts payable clerk in charge of writing garnishment checks, she was "authorized" to write the check in question. The State responds that Brooks was not authorized to write the check for the purpose or amount she did. Brooks replies that under the State's construction of the statute, every instance of theft involving a check becomes a forgery.

■ We begin our discussion of this issue with a brief review of the crime of forgery. In general terms, forgery "is the false making or material alteration, with intent to defraud, of a writing which, if genuine, has apparent legal efficacy." 4 Charles E. Torcia, *Wharton's Criminal Law* § 493, at 114 (1981) [hereinafter *Wharton's* ]; *accord State v. Kendrick,* 173 N.W.2d 560, 561 (Iowa 1970). A legislature's decision to criminalize this conduct reflects society's concern that instruments and records upon which the public relies in important transactions be authentic. Model Penal Code § 224.1 cmt. 1, at 283 (1980) [hereinafter Model Penal Code]. In other words, the public interests being protected by a forgery statute go beyond the pocketbook of the person who suffers financial loss from a theft or fraud; a forgery statute protects the integrity and reliability of our commercial systems by discouraging the making or circulation of writings that are not authentic. *Lewis v. Superior Ct.,* 217 Cal.App.3d 379, 265 Cal.Rptr. 855, 858 (1990) (Forgery "is maintained as a distinct, felony offense from theft by false pretenses because forgery threatens the system of written instruments upon which modern commerce critically depends."); *State v. Propps,* 376 N.W.2d 619, 622 (Iowa 1985) (stating the goal of the predecessor statute to chapter 715A was to address crimes that have an "adverse impact on the integrity of the financial system"); *State v. Johnson,* 855 S.W.2d 470, 473 (Mo.App.1993) (court held signing false name to fingerprint card was a forgery, noting "[c]onfidence in the integrity of documents used by public officials for identification purposes is of the utmost importance"); *State v. DeMatteo,* 134 N.H. 296, 591 A.2d 1323, 1324 (1991) ("forgery is made a crime in order to protect the integrity of commercial, legal, and other written documents and symbols"). In accordance with this purpose, the commentators for the Model Penal Code emphasize that the distinguishing feature of forgery "is the requirement that the falsity relate to authenticity." Model Penal Code § 224.1 cmt. 4, at 289.

The act-of-another alternative of the Iowa forgery statute was taken verbatim from the Model Penal Code section 224.1. Although sensitive to the possibility of a dangerous overlap between forgery and white collar theft, *see id.* cmt. 2, at 285, the model statute was specifically drafted to reach the unauthorized actions of employees. *Id.* cmts. 2, 4(b), 4(c), at 285, 293, 294. Previous case law held that if an agent overtly represents an authority to do what she is doing (for example, by endorsing a check "Jane Smith, agent"), she is not guilty of forgery. *E.g., Gilbert v. United States,* 370 U.S. 650, 658–59, 82 S.Ct. 1399, 1404, 8 L.Ed.2d 750, 756 (1962). The purpose of the model provision was to avoid this result because

> [t]here is no reason in principle to distinguish this case from others that are properly within the concept of forgery. Such a defect of authority goes to the authenticity of the document as much as an unauthorized signing that does not purport to be by an agent.

Model Penal Code § 224.1 cmt. 4(b), at 293.

Commentators agree that an agent may commit forgery, if acting in "disobedience of his instructions or in the improper exercise of his authority." 37 C.J.S. *Forgery* § 8, at

38 (1943); *accord* 36 Am.Jur.2d *Forgery* § 9, at 686 (1968). According to one treatise, an agent commits forgery when, with intent to defraud, the agent "inserts unauthorized terms in an instrument." *Wharton's* § 497, at 120–21 (citing *State v. Maxwell,* 47 Iowa 454 (1877)).

■ Section 715A.2 was adopted in 1987, well after the model law and the explanatory commentaries were published in 1980. *See* 1987 Iowa Acts ch. 150, § 2. Because the Iowa legislature chose to adopt the Model Penal Code language, we presume it intended section 715A.2 to have the meaning explained in the comments to the model forgery provision. *See Adam v. Mount Pleasant Bank & Trust Co.,* 340 N.W.2d 251, 252 (Iowa 1983) ("Because [the Iowa Tort Claims Act] is based on the federal Tort Claims Act, we assume our legislature intended it to have the same meaning as the federal statute."); *Johnson,* 855 S.W.2d at 473 (reasoning that because Missouri legislature duplicated Model Penal Code provision, legislature intended Missouri statute to have meaning shown in comments to the model code). Consequently, we hold an agent authorized to write checks on her employer's account may be found guilty of forgery if, with the necessary intent, the agent acts beyond her authority in writing the check. That is exactly what Brooks did here. Brooks had authority to write garnishment checks on Benco's account; she did not have authority to write them for a sum in excess of the wages withheld from the employee's account.

Brooks argues that *any* theft is unauthorized and therefore, upholding her conviction of forgery unfairly brands her a felon for a mere theft. In *State v. Ross,* 512 N.W.2d 830 (Iowa App.1993), our court of appeals affirmed a forgery conviction based on an employee's passing of his employer's checks without authority. The employee, Ross, had stolen blank checks from his employer and had no authority to fill them out, sign them or cash them. *Ross,* 512 N.W.2d at 831. We see no reason to distinguish Brooks' actions from those of Ross. Both Brooks and Ross had no authority to write the checks they were charged with forging. The fact that Brooks may have had authority to write other checks on behalf of her employer does not change the nature of her act. She, like Ross, made an instrument that was not genuine, the very essence of a forgery. Moreover, unlike a simple theft from an employer's cash drawer which affects only the employer, Brooks' act threatened the reliability and integrity of the financial system and the garnishment process. Consequently, we reject her argument that her act was merely a simple theft, and not felony forgery.

Because we construe section 715A.2(1)(b) to encompass the unauthorized actions of Brooks, we conclude there was a factual basis for her guilty plea to the crime of forgery under the act-of-another alternative. This conclusion makes it unnecessary for us to consider whether the record showed a factual basis for Brooks' guilty plea under the back-dating alternative of section 715A.2(1)(b).

Brooks' trial counsel was not ineffective in allowing her to plead guilty to forgery. Therefore, her conviction must be affirmed.

**AFFIRMED.**