IN THE SUPREME COURT OF IOWA

 No. 111 / 04-0952

 Filed February 3, 2006

STATE OF IOWA,

 Appellee,

vs.

CARY LEE STRAW,

 Appellant.
________________________________________________________________________
 On review from the Iowa Court of Appeals.

 Appeal from the Iowa District Court for Fayette County, J.G. Johnson,
District Associate Judge.

 Defendant appeals from his conviction and sentence upon his plea of
guilty to possession of a controlled substance, third offense, and driving
while barred. Affirmed.

 Linda Del Gallo, State Appellate Defender, and Greta A. Truman,
Assistant State Appellate Defender, for appellant.

 Thomas J. Miller, Attorney General, Kristin Guddall, Assistant
Attorney General, and W. Wayne Saur, County Attorney, for appellee.

STREIT, Justice.
 Cary Lee Straw appeals from the judgments and sentences entered by the
district court following his guilty pleas to possession of a controlled
substance, third offense, and driving while barred. Straw claims the
district court erred by not substantially complying with the requirements
of Iowa Rule of Criminal Procedure 2.8(2)(b). He also claims his counsel
rendered ineffective assistance by failing to file a motion in arrest of
judgment after the district court did not inform him of the maximum
punishment he could face by pleading guilty. The court of appeals affirmed
the decision of the district court. Upon our review, we affirm the
decision on different grounds and preserve the issue for postconviction
relief proceedings.
 I. Facts and Prior Proceedings
 On a Tuesday afternoon in the fall of November 2003, Cary Lee Straw
rolled through the town of Oelwein with a license plate that did not match
his vehicle. A police officer stopped Straw to investigate the license
plate and discovered Straw was driving while barred. The officer arrested
him, searched him, and found a plastic bag containing marijuana and rolling
papers in his pocket. The officer also noticed an open bottle of Jim Beam
bourbon whiskey and an open bottle of vodka in the back seat. Straw was
charged with possession of a controlled substance (third offense), driving
while barred, and possession of drug paraphernalia. He was also cited for
an open container violation and improper use of a vehicle registration.
 Pursuant to a plea agreement, Straw pled guilty to possession of a
controlled substance, third offense, and driving while barred. See Iowa
Code §§ 124.401(5) (2003) (possession of a controlled substance, third
offense, class “D” felony), 321.561 (driving while barred, aggravated
misdemeanor). In exchange for his plea, the State dismissed the
paraphernalia charge, as well as the improper use of registration and open
container citations. The agreement also specified Straw would make his own
recommendation for sentencing while the State would recommend concurrent
sentences for both charges.[1]
 Before accepting the plea, the court spoke with Straw and discussed
the elements of the charged offenses, the factual basis for those charges,
the right to go to trial, rights pursuant to trial, and the fact that if he
pled guilty he would be forfeiting those rights. The court did not discuss
the maximum punishment he would face by pleading guilty. The court
accepted Straw’s plea and found it “knowingly and voluntarily made” with a
basis in fact. Straw never filed a motion in arrest of judgment to
challenge the validity of his plea.
 Weeks later, the sentencing court imposed sentences of up to five
years for the possession of marijuana charge and up to two years for the
driving-while-barred charge. The court ordered the sentences consecutive
to each other and consecutive to a separate, unrelated conviction.
 Straw appealed, contending the district court erred by not properly
informing him of the potential punishments he faced for pleading guilty to
these charges, and erred by not explaining these sentences could be ordered
to run consecutively. Straw claimed this rendered his plea unknowing and
involuntary. Straw asserted his claim should be considered directly on
appeal because the district court did not adequately advise him of his
right to file a motion in arrest of judgment. In the alternative, Straw
claimed his counsel was ineffective for failing to ensure he was fully
informed at the plea proceeding and for failing to file a motion in arrest
of judgment.
 We transferred the case to the court of appeals. The court of appeals
found the district court substantially complied with its duty to inform
Straw of his right to file a motion in arrest of judgment and determined
Straw did not preserve the error for direct appeal because he did not file
such a motion. It then analyzed whether Straw’s counsel was ineffective.
It determined Straw’s counsel violated an essential duty by not filing a
motion in arrest of judgment, but ultimately affirmed the district court
because it found Straw was not prejudiced by the error because he had
received a favorable plea and the evidence against him was overwhelming.
We granted further review.
 II. Error Preservation
 The State contends Straw may not directly challenge his guilty plea on
appeal because he did not file a motion in arrest of judgment contesting
the legality of his plea. See Iowa R. Crim. P. 2.24(3) (“A defendant’s
failure to challenge the adequacy of a guilty plea proceeding by motion in
arrest of judgment shall preclude the defendant’s right to assert such
challenge on appeal.”); see State v. Loye, 670 N.W.2d 141, 149 (Iowa
2003).[2] Straw contends this requirement does not apply because the trial
court did not adequately advise him that failure to file a motion in arrest
of judgment would preclude him from later raising issues regarding his
guilty plea on appeal. See Iowa R. Crim. P. 2.8(2)(d) (“The court shall
inform the defendant that any challenges to a plea of guilty based on
alleged defects in the plea proceedings must be raised in a motion in
arrest of judgment and that failure to so raise such challenges shall
preclude the right to assert them on appeal.”); Loye, 670 N.W.2d at 149
(stating court’s failure to comply with rule 2.8(2)(d) operates to
reinstate the defendant’s right to appeal the legality of his plea).
 Following Straw’s guilty plea, the district court told Straw:

 Now, if you have—wish to appeal or challenge any of the
 proceedings that have taken place in the courtroom today, you have to
 file a paper that we call a Motion in Arrest of Judgment. That is
 simply a paper that basically says I didn’t follow all of the correct
 procedures in taking your guilty plea and it gives me a chance to go
 back and correct that. Mr. Harden can explain that to you. But the
 important thing is that that paper must be filed not less than five
 days before sentencing. So, when we come back for sentencing, if no
 such motion has been filed, then we will proceed to sentencing, and we
 will assume that all the procedures we followed up to this point are
 correct. Do you understand that, sir?

Straw responded, “Yes, Your Honor.”
 We employ a substantial compliance standard in determining whether a
trial court has discharged its duty under rule 2.8(2)(d). Id. at 150. The
court must ensure the defendant understands the necessity of filing a
motion to challenge a guilty plea and the consequences of failing to do so.
 Id.
 The court’s comments were sufficient to discharge its duty under rule
2.8(2)(d). Instead of quoting rule 2.8(2)(d) verbatim, the court performed
its duty commendably by using plain English to explain the motion in arrest
of judgment. The court’s statement plainly indicated that if Straw wanted
to appeal or challenge the guilty plea, he had to file a motion in arrest
of judgment. It also indicated this motion had to be filed not less than
five days before sentencing. In whole, it conveyed the pertinent
information and substantially complied with the requirements of rule
2.8(2)(d). Therefore, Straw’s failure to move in arrest of judgment bars a
direct appeal of his conviction. Iowa R. Crim. P. 2.24(3)(a); State v.
Brooks, 555 N.W.2d 446, 448 (Iowa 1996). However, this failure does not
bar a challenge to a guilty plea if the failure to file a motion in arrest
of judgment resulted from ineffective assistance of counsel. Brooks, 555
N.W.2d at 448.
 III. Merits and Scope of Review
 An ineffective-assistance-of-counsel claim in a criminal case “need
not be raised on direct appeal from the criminal proceedings in order to
preserve the claim for postconviction relief purposes.” Iowa Code
§ 814.7(1) (2005). The defendant may raise the ineffective assistance
claim on direct appeal if he or she has reasonable grounds to believe the
record is adequate to address the claim on direct appeal. Id. § 814.7(2).
If an ineffective-assistance-of-counsel claim is raised on direct appeal
from the criminal proceedings, we may decide the record is adequate to
decide the claim or may choose to preserve the claim for postconviction
proceedings. Id. § 814.7(3). Only in rare cases will the trial record
alone be sufficient to resolve the claim on direct appeal. State v. Atley,
564 N.W.2d 817, 833 (Iowa 1997) (stating claims of ineffective assistance
of counsel raised on direct appeal are ordinarily reserved for
postconviction proceedings to allow full development of the facts
surrounding counsel’s conduct); State v. Coil, 264 N.W.2d 293, 296 (Iowa
1978). We review ineffective-assistance-of-counsel claims de novo. State
v. Button, 622 N.W.2d 480, 483 (Iowa 2001).
 A. Ineffective Assistance
 To establish his claim of ineffective assistance of counsel, Straw
must demonstrate (1) his trial counsel failed to perform an essential duty,
and (2) this failure resulted in prejudice. Strickland v. Washington, 466
U.S. 668, 687-88, 104 S. Ct. 2052, 2065, 80 L. Ed. 2d 674, 693 (1984);
State v. Dalton, 674 N.W.2d 111, 119 (Iowa 2004). Straw must prove both
elements by a preponderance of the evidence. State v. Gant, 597 N.W.2d
501, 504 (Iowa 1999). As discussed in the following analysis, the record
does not adequately present the issues in this case and the case is more
properly addressed in a postconviction relief hearing. See State v.
Ueding, 400 N.W.2d 550, 553 (Iowa 1987).
 1. Failure to Perform an Essential Duty
 Under the first prong of this test, counsel’s performance is measured
“against the standard of a reasonably competent practitioner with the
presumption that the attorney performed his duties in a competent manner.”
Dalton, 674 N.W.2d at 119. Straw claims his counsel violated an essential
duty by failing to file a motion in arrest of judgment prior to sentencing.
 There is adequate evidence in the record to decide this issue on direct
appeal.
 Due process requires the defendant enter his guilty plea voluntarily
and intelligently. State v. Philo, 697 N.W.2d 481, 488 (Iowa 2005). “If a
plea is not intelligently and voluntarily made, the failure by counsel to
file a motion in arrest of judgment to challenge the plea constitutes a
breach of an essential duty.” Id. In order to ensure a guilty plea is
voluntarily and intelligently made, the court must articulate the
consequences of the plea to the defendant. State v. Boone, 298 N.W.2d 335,
337 (Iowa 1980). Iowa Rule of Criminal Procedure 2.8(2)(b) provides the
court with a blueprint for the guilty plea proceeding:

 Before accepting a plea of guilty, the court must address the
 defendant personally in open court and inform the defendant of, and
 determine that the defendant understands, the following:
 (1) The nature of the charge to which the plea is offered.

 (2) The mandatory minimum punishment, if any, and the maximum possible
 punishment provided by the statute defining the offense to which the
 plea is offered.

 (3) That a criminal conviction, deferred judgment, or deferred
 sentence may affect a defendant’s status under federal immigration
 laws.

 (4) That the defendant has the right to be tried by a jury, and at
 trial has the right to assistance of counsel, the right to confront
 and cross-examine witnesses against the defendant, the right not to be
 compelled to incriminate oneself, and the right to present witnesses
 in the defendant’s own behalf and to have compulsory process in
 securing their attendance.

 (5) That if the defendant pleads guilty there will not be a further
 trial of any kind, so that by pleading guilty the defendant waives the
 right to a trial.

Iowa R. Crim. P. 2.8(2)(b) (emphasis added). Substantial compliance with
this rule is required. State v. Kirchoff, 452 N.W.2d 801, 804 (Iowa 1990).
 The State concedes the district court did not substantially comply
with rule 2.8(2)(b)(2) when it omitted any mention of the punishment Straw
could face by pleading guilty to the charges in this case. See, e.g., id.
(holding substantial compliance is the measure for judging whether the
requirements of rule 2.8(2)(b) have been met). When Straw’s counsel did
not bring this matter to the court’s attention or file a motion in arrest
of judgment, his counsel failed to perform an essential duty. See State v.
Myers, 653 N.W.2d 574 (Iowa 2002) (finding counsel breached an essential
duty by failing to raise court’s failure to inform the defendant of the
right to compulsory process); State v. Kress, 636 N.W.2d 12 (Iowa 2001)
(holding defense counsel’s failure to correct court’s misinformation
concerning defendant’s potential sentence exposure, or to file motion in
arrest of judgment raising the issue, placed counsel below range of normal
competency).
2. Resulting Prejudice
 Straw claims he suffered prejudice because, had he understood the
sentences could be made consecutive,[3] he would not have pled guilty. The
fighting issue in this case is what standard should be applied to evaluate
Straw’s claim under this prejudice element. Four cases guide our analysis.

 In 1983, we reviewed Joseph Ross Meier’s appeal from the denial of his
application seeking postconviction relief from his conviction pursuant to a
guilty plea. Meier v. State, 337 N.W.2d 204, 205 (Iowa 1983). In the
postconviction relief (PCR) hearing Meier established a record for our
review. Id. At the PCR hearing, Meier described how his original counsel
had told him that if he stood trial and was convicted, he would be given a
twenty-five year sentence with a mandatory five-year sentence; however, if
he pled guilty, he would get the twenty-five years without the mandatory
term. Id. He thought his counsel meant that if he accepted the bargain,
he could be released in less than five years; however, if he did not accept
the bargain and was eventually convicted, then he would be in prison at
least five years before he would be eligible for any kind of release. Id.
 His original counsel substantiated his claim—“I am sure that I told Mr.
Meier that if we stood trial and . . . that sentencing provision were
invoked, that he would serve five years and be eligible for parole at the
expiration of five years.” Id. Based on his counsel’s advice, Meier pled
guilty and waived his right to trial. Id.
 The PCR trial court found Meier’s original counsel misadvised him of
the law. Id. However, because Meier “got what he bargained for; that is,
a 25-year sentence without a mandatory minimum sentence,” the court
concluded the record did not demonstrate his counsel was so “mistaken or
careless in his advice to [Meier] to amount to ineffective assistance of
counsel.” Id. at 205-06. Our court disagreed and reversed. Id. at 208.
Noting the test in this context was for ineffective assistance of counsel,
we determined Meier’s trial counsel gave erroneous advice regarding the law
and Meier relied on this advice in waiving trial and pleading guilty. Id.
at 206-08. When it came to the prejudice element, we did not focus on what
sentence Meier received, but instead focused on what he relinquished. Id.
at 208. We found a due process deprivation occurred when Meier was unable
to make an intelligent and informed choice from among his alternate courses
of action at the plea hearing and we would not speculate as to the outcome
of the trial waived by the guilty plea. Id. We reversed and remanded so
Meier could plead anew. Id.
 In Meier, the dissent focused on whether Meier proved he was
substantially prejudiced by his attorney’s misadvice. Id. The dissent
noted the following evidence indicated there was no actual prejudice
suffered by Meier: (1) there was “not even a hint of evidence that
petitioner could have obtained a better result,” (2) his original attorney
testified Meier had no chance to prevail in a jury trial on the issue of
culpability, and (3) his original attorney thought the best deal was to
take the plea bargain. Id. In the face of these three findings, the
dissent found Meier failed to prove he suffered prejudice from his
counsel’s misadvice. Id.
 Two years after Meier, the United States Supreme Court discussed the
prejudice element of an ineffective-assistance-of-counsel claim in the
context of a guilty plea. Hill v. Lockhart, 474 U.S. 52, 59, 106 S. Ct.
366, 370, 88 L. Ed. 2d 203, 210 (1985). In Hill v. Lockhart, the Court
considered a prisoner’s petition for habeas corpus alleging his trial
counsel was ineffective in failing to accurately inform him as to his
eligibility for parole. Id. The district court denied habeas relief
because neither state law nor federal law required that Hill be informed of
his parole eligibility date prior to pleading guilty. Id. at 55, 106 S.
Ct. at 368, 88 L. Ed. 2d at 207-08. A divided Court of Appeals for the
Eighth Circuit affirmed the district court, with the dissent arguing a
hearing should have been held to determine whether Hill’s counsel wrongly
advised him on his parole eligibility prior to the plea. Hill v. Lockhart,
731 F.2d 568, 573 (8th Cir. 1984).
 The Supreme Court affirmed the decision of the court of appeals,
stating the prejudice element in a guilty plea case “focuses on whether
counsel’s constitutionally ineffective performance affected the outcome of
the plea process.” Hill, 474 U.S. at 59, 106 S. Ct. at 370, 88 L. Ed. 2d.
at 210. The Court stated: “in order to satisfy the ‘prejudice’
requirement, the defendant must show that there is a reasonable probability
that, but for counsel’s errors, he would not have pleaded guilty and would
have insisted on going to trial.” Id.
 The Court described this test by explaining how, in many guilty plea
cases, the prejudice inquiry would resemble the same inquiry as when the
conviction was obtained through trial. Id. For example, when the alleged
error of counsel is a failure to investigate potentially exculpatory
evidence, the determination whether this failure prejudiced the defendant
by causing him to enter into a plea agreement rather than go to trial will
depend on whether it was likely the discovered evidence would have changed
his counsel’s recommendation as to the plea. Id. “This assessment . . .
will depend in large part on a prediction whether the evidence likely would
have changed the outcome of [the] trial.” Id. However, the Court did not
reach the question whether erroneous advice by counsel as to parole
eligibility would be constitutionally ineffective assistance of counsel
because Hill “did not allege in his habeas petition that had counsel
correctly informed him about his parole eligibility date . . . he would
have pleaded not guilty and insisted on going to trial.” Id. at 60, 106 S.
Ct. at 371, 88 L. Ed. 2d at 211. The Court noted he “alleged no special
circumstances that might support the conclusion that he placed particular
emphasis on his parole eligibility in deciding whether or not to plead
guilty” and it therefore found Hill did not satisfy the second prong of the
ineffective assistance test. Id.
 After the Hill decision, we applied the “reasonable probability”
standard to ineffective-assistance-of-counsel claims. See, e.g., State v.
Hopkins, 576 N.W.2d 374, 378 (Iowa 1998) (evaluating prejudice in the
context of a conviction by jury trial); Irving v. State, 533 N.W.2d 538,
541 (Iowa 1995) (evaluating prejudice in the context of a conviction by
guilty plea).
 In State v. Kress, we again discussed the prejudice element of an
ineffective-assistance-of-counsel claim in the context of a guilty plea. In
Kress, the trial court accepting the guilty plea misinformed the defendant
that the sentencing court could waive a mandatory minimum sentencing
requirement. 636 N.W.2d at 21-22. We began our ineffective-assistance-of-
counsel analysis by applying the familiar two-step test. Id. at 20. We
first determined the defendant’s trial counsel failed to perform an
essential duty by not correcting the court’s misinformation or filing a
motion in arrest of judgment. Id. at 22. We then turned to the second
element, resulting prejudice. The following is our entire analysis of this
element:

 Turning to the prejudice element, we think the prejudice results
 from what Kress relinquished. [Meier, 337 N.W.2d at 208]. Kress ‘had
 an unqualified constitutional right to a trial on the issue of [her]
 guilt, which she [may have] abandoned on the strength of [the court’s
 misinformation].’ Id. We do not speculate on the outcome of the
 trial waived by her guilty plea. Id. As mentioned, the remedy called
 for in these circumstances is to set aside the conviction and sentence
 and allow the defendant to plead anew.

Id. Rather than explicitly discussing the Hill reasonable probability
analysis, we cited Meier and concluded there was resulting prejudice.
 In State v. Myers, we again considered a direct appeal of an
ineffective-assistance-of-counsel claim in the context of a guilty plea.
653 N.W.2d at 577. In this case, the defendant was not informed of the
right to compulsory process during the plea colloquy. Id. The defendant
claimed she received ineffective assistance of counsel when her counsel
failed to file a motion in arrest of judgment after the court told her “you
. . . have the right to present any witnesses in your own defense” rather
than explaining she could force the attendance of such witnesses, as
required by rule 2.8(2)(b)(4) (compulsory process). Id. We determined the
trial counsel’s failure to correct the judge or file a motion in arrest of
judgment established the first prong of the test for ineffective assistance
of counsel, but we found the second prong of the ineffective-assistance-of-
counsel test to be “more problematic.” Id. at 578. We did not cite either
Meier or Kress as authority for the prejudice element. Instead, we
analyzed the prejudice element under the “reasonable probability” framework
set forth in Hill. Id. After a thorough analysis under this standard, we
concluded the defendant failed to prove, or even assert, there was “a
reasonable probability that, ‘but for counsel’s error[ ], [s]he would not
have pleaded guilty and would have insisted on going to trial.’” Id.
(quoting Hill, 474 U.S. at 59, 106 S. Ct. at 370, 88 L. Ed. 2d at 210). We
stated the defendant’s right of compulsory process could not be claimed “in
a vacuum,” and a conclusory claim that she was ready to insist on going to
trial was not a sufficient assertion of prejudice. Id. at 578-79. We
noted the defendant had not claimed there were any witnesses whose
testimony was denied her because she could not force them to testify. Id.
at 579.
 The brevity of our analysis of the prejudice element in Kress has led
some to characterize our holding as a per se rule of prejudice when the
district court fails to tell the defendant the maximum sentence on an
ineffective-assistance-of-counsel claim. We reject this characterization
because Kress was an aberration which failed to consider the analysis set
forth in Hill. We also refuse to adopt a per se rule of prejudice because
such a rule would force us to accept conclusory claims of prejudice without
the benefit of a true review of the circumstances surrounding the plea.
Under the “reasonable probability” test, the defendant, who has already
admitted to committing the crime, has the burden to prove he or she would
not have pled guilty if the judge had personally addressed the maximum
punishment for his or her crimes. On the other hand, if we adopted a per
se rule, some defendants would grin like a Cheshire cat as we gave them a
second bite at the apple—even though they committed the crime and actually
knew the maximum length of punishment for the crime.[4] Such a rule would
undermine the court’s integrity and erode the public’s confidence in its
criminal justice system. Though, on its face, it may appear easier to
reverse the conviction and let Straw plead anew, the driving force behind
our decision is the common-sense notion that a conviction will not be
reversed unless the judicial misstep complained of prejudiced the
defendant.
 Our standard for the prejudice element in ineffective-assistance-of-
counsel claims remains consistent—in order to satisfy the prejudice
requirement, the defendant must show that there is a reasonable probability
that, but for counsel’s errors, he or she would not have pleaded guilty and
would have insisted on going to trial. Id. (quoting Hill, 474 U.S. at 59,
106 S. Ct. at 370, 88 L. Ed. 2d at 210).
 Under the “reasonable probability” standard, it is abundantly clear
that most claims of ineffective assistance of counsel in the context of a
guilty plea will require a record more substantial than the one now before
us. Unlike our decision in Meier, there is nothing in this record to
indicate whether or not Straw’s trial counsel told him about the
possibility of consecutive sentences. Such evidence could be a significant
part of our prejudice analysis.[5] This case exemplifies why claims of
ineffective assistance of counsel should normally be raised through an
application for postconviction relief. In only rare cases will the
defendant be able to muster enough evidence to prove prejudice without a
postconviction relief hearing. Atley, 564 N.W.2d at 833; Coil, 264 N.W.2d
at 296.
 IV. Conclusion
 Once a defendant waives his or her right to a trial by pleading guilty
and then does not file a motion in arrest of judgment prior to sentencing,
“the State is entitled to expect finality in the conviction.” State v.
Mann, 602 N.W.2d 785, 789 (Iowa 1999). “This is true because ‘[a] plea of
guilty is more than a confession which admits that the accused did various
acts; it is itself a conviction.’ ” State v. LaRue, 619 N.W.2d 395, 397
(Iowa 2000) (quoting Boykin v. Alabama, 395 U.S. 238, 242, 89 S. Ct. 1709,
1711, 23 L. Ed. 2d 274, 279 (1969)). Nothing in the record before us
indicates we should overturn Straw’s conviction. We affirm the decision of
the court of appeals and uphold the conviction and sentence. Straw’s
ineffective-assistance-of-counsel claim is preserved for postconviction
relief proceedings.
Affirmed.
 All justices concur except Lavorato, C.J. and Wiggins, J., who
dissent.
 #111/04-0952, State v. Cary Lee Straw

LAVORATO, Chief Justice (dissenting).
 This case involves a claim of ineffective assistance of counsel
arising out of a guilty plea. Pursuant to a plea agreement, the defendant
pleaded guilty to two offenses: possession of a controlled substance and
driving while barred. In return for the plea, the State agreed to drop
several other charges. The record is clear that before the district court
accepted the plea, it failed to advise the defendant that it could impose
consecutive sentences.
 On appeal, the defendant contended that the district court erred when
it did not inform him that it could impose consecutive sentences and for
that reason the plea was not knowingly and voluntarily entered. The
defendant also contended that his counsel was ineffective for failing to
ensure that the defendant was fully informed at the plea proceeding
regarding the potential for consecutive sentences and for failing to file a
motion in arrest of judgment challenging the plea on this basis.
 I agree with the majority that when the defendant’s counsel did not
bring this matter to the district court’s attention or failed to file a
motion in arrest of judgment, counsel failed to perform an essential duty.
I disagree with the majority’s holding on the prejudice prong of the claim
for ineffective assistance of counsel. My reasons for disagreeing follow.
 As we noted in State v. Loye,

 The Due Process Clause [of the Fourteenth Amendment to the
 Federal Constitution] requires that a guilty plea be voluntary. “To
 be truly voluntary, the plea must not only be free from compulsion,
 but must also be knowing and intelligent.” Consequently, a defendant
 must be aware not only of the constitutional protections that he gives
 up by pleading guilty, but he must also be conscious of “the nature of
 the crime with which he is charged” and the potential penalties.

670 N.W.2d 141, 150-51 (Iowa 2003) (emphasis added) (citations omitted);
see also State v. Philo, 697 N.W.2d 481, 488 (Iowa 2005) (“ ‘A guilty plea
results in a waiver of several constitutional rights. For the waiver to be
valid, there must be an intentional relinquishment of known rights. Due
process therefore requires that a defendant enter a guilty plea voluntarily
and intelligently.’ ” (Citation omitted.)).
 Iowa Rule of Criminal Procedure 2.8(2)(b) was passed to ensure that
pleas are voluntary, State v. Fluhr, 287 N.W.2d 857, 863 (Iowa 1980),
overruled on other grounds by State v. Kirchoff, 452 N.W.2d 801, 804-05
(Iowa 1990), and “codifies this due process mandate,” Loye, 670 N.W.2d at
151. Rule 2.8(2)(b) provides in part:

 The court may refuse to accept a plea of guilty, and shall not accept
 a plea of guilty without first determining that the plea is made
 voluntarily and intelligently and has a factual basis. Before
 accepting a plea of guilty, the court must address the defendant
 personally in open court and inform the defendant of, and determine
 that the defendant understands, the following:
 (1) The nature of the charge to which the plea is offered.
 (2) The mandatory minimum punishment, if any, and the maximum
 possible punishment provided by the statute defining the offense to
 which the plea is offered.
 (3) That a criminal conviction, deferred judgment, or deferred
 sentence may affect a defendant’s status under federal immigration
 laws.
 (4) That the defendant has the right to be tried by a jury, and
 at trial has the right to assistance of counsel, the right to confront
 and cross-examine witnesses against the defendant, the right not to be
 compelled to incriminate oneself, and the right to present witnesses
 in the defendant’s own behalf and to have compulsory process in
 securing their attendance.
 (5) That if the defendant pleads guilty there will not be a
 further trial of any kind, so that by pleading guilty the defendant
 waives the right to a trial.

Iowa R. Crim. P. 2.8(2)(b)(1)-(5) (emphasis added).
 As the majority notes, we apply a substantial compliance standard in
assessing whether the trial court has adequately informed the defendant of
the matters listed in the rule. Loye, 670 N.W.2d at 151. “
‘Substantial compliance’ requires at a minimum that the defendant be
informed of these matters and understand them.” Id.
 A failure to challenge the plea in a motion in arrest of judgment
precludes a defendant from asserting such a challenge on appeal. Iowa R.
Crim. P. 2.24(3)(a). One exception occurs when during the plea the court
fails to advise the defendant, as required by rule 2.8(2)(d), of the
necessity to file the motion within the time set out in rule 2.24(3)(b).
Loye, 670 N.W.2d at 149-50. Another exception occurs when the failure to
file the motion results from ineffective assistance of counsel, State v.
Brooks, 555 N.W.2d 446, 448 (Iowa 1996), which is the case here.
 On direct appeal, the remedy for a successful challenge to a guilty
plea is to vacate the plea, reverse the judgment of conviction, and remand
the case to allow the defendant to plead anew. Loye, 670 N.W.2d at 153-54
(because the district court did not substantially comply with rule
2.8(2)(b)(1)-(2) when it did not confirm that the defendant understood the
nature of the charges to which she intended to plead guilty or the maximum
possible punishments that might result from the plea, the plea violated the
Due Process Clause and for that reason had to be set aside); State v.
White, 587 N.W.2d 240, 246-47 (Iowa 1998) (plea was successfully challenged
on appeal based on ground that defendant was not informed that the maximum
punishment that could be imposed included consecutive sentences). The
remedy is applied even if counsel has discussed the same matters with the
defendant in preparation for the plea hearing. Loye, 670 N.W.2d at 153.
Thus reversal is automatic if the court taking the plea does not
substantially comply with the requirements of the rule. In these
circumstances, we are strictly enforcing the rule.
 When the appeal occurs in the context of a claim of ineffective
assistance of counsel, we have applied essentially the same remedy with
some modification if the plea lacks a factual basis. See, e.g., State v.
Hack, 545 N.W.2d 262, 263 (Iowa 1996). When the claim is lack of a factual
basis, two possible remedies exist. State v. Mitchell, 650 N.W.2d 619, 621
(Iowa 2002) (per curiam). If the record establishes that the defendant was
charged with the wrong crime, we have vacated the judgment of conviction
and sentence and remanded for dismissal of the charge. Id.; Hack, 545
N.W.2d at 263. In those circumstances, we allow the State to reinstate a
charge dismissed in contemplation of a valid plea or re-indict the
defendant under a code section supportable by the available evidence.
Hack, 545 N.W.2d at 263. But if it is possible that a factual basis could
be shown, the more appropriate remedy is to vacate the sentence and remand
for further proceedings to give the State an opportunity to establish a
factual basis. Mitchell, 650 N.W.2d at 621.
 The net result of Mitchell and Hack is that we presume prejudice, that
is, we apply a prejudice per se rule, which is contrary to the prejudice
prong of a claim for ineffective assistance of counsel. Ordinarily, under
the prejudice prong of a claim for ineffective assistance of counsel, we
apply the prejudice requirement in Strickland v. Washington, 466 U.S. 668,
104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) when a defendant is claiming a
violation of his rights under the Sixth Amendment to the Federal
Constitution. Under the Strickland requirement, “[t]he defendant must show
that there is a reasonable probability that, but for counsel’s
unprofessional errors, the result of the proceeding would have been
different.” 466 U.S. at 694, 104 S. Ct. at 2068, 80 L. Ed. 2d at 698. The
prejudice requirement was based on the Court’s conclusion that “[a]n error
by counsel, even if professionally unreasonable, does not warrant setting
aside the judgment of a criminal proceeding if the error had no effect on
the judgment.” Id. at 691, 104 S. Ct. at 2066, 80 L. Ed. 2d at 696.
 In Hack, we expressed our reasons for refusing to apply the Strickland
prejudice requirement in a claim of ineffective of assistance of counsel
arising out of a guilty plea that lacks a factual basis:

 The court of appeals affirmed Hack’s conviction, preserving the
 allegation of ineffective assistance of counsel for postconviction
 review. Its decision rested on the belief that counsel may have had
 strategic reasons for permitting his client to plead guilty
 notwithstanding the lack of a factual basis. Endorsing such
 strategies, however, would erode the integrity of all pleas and the
 public’s confidence in our criminal justice system. For this reason,
 they cannot be permitted.

545 N.W.2d at 263 (emphasis added) (citations omitted).
 I submit the same reasons support a refusal to apply the Strickland
prejudice requirement when defendants plead guilty without being informed
of the maximum possible punishment they face. White involved a direct
appeal in which we concluded that a failure to inform the defendant of the
possibility of consecutive sentences rendered his guilty plea involuntary.
587 N.W.2d at 241. We said in White:

 “Duration of incarceration unquestionably goes to the very heart of
 voluntariness required for a valid waiver of a defendant’s right to
 trial on the charge alleged . . . .
 It is virtually self-evident that a defendant’s decision to
 plead guilty . . . to a criminal charge is a grave and personal
 judgment, which a defendant should not be allowed to enter without
 full comprehension of possible consequences of conviction by such
 plea. Whether it be the maximum term of imprisonment authorized by
 the statute prescribing a penalty for conviction of a crime or whether
 it be a combination of terms of imprisonment imposed as penalties for
 convictions of separate crimes, duration of possible imprisonment is
 an important factor affecting any defendant’s intelligent choice
 between the alternatives confronting a defendant—going to trial or
 entering a plea of guilty . . . . Anyone unaware that the term or
 duration of incarceration acutely affects a defendant’s decision
 regarding a guilty . . . plea in a criminal case is oblivious to one
 of the realities in our system for efficient criminal justice.”

Id. at 246 (citation omitted).
 In terms of deprivation of due process, I equate a failure to inform
defendants of the maximum possible punishment with a failure to establish a
factual basis. As the above quote so eloquently suggests, nothing is more
important to defendants contemplating a plea than knowing the maximum
possible punishment they face. Rule 2.8(2)(b) requires a factual basis for
a plea as well as requiring the court to inform the defendant of the
maximum possible punishment. Both requirements go to the heart of
voluntariness. Moreover, contrary to the majority’s view, a failure to
abide by either requirement violates the spirit and purpose of rule
2.8(2)(b) and erodes the integrity of the plea process along with the
public’s confidence in the criminal justice system.
 In State v. Stallings, we held that trial counsel was ineffective for
failing to comply with a rule to ensure that the defendant’s waiver of a
jury trial was knowing, voluntary, and intelligent. 658 N.W.2d 106, 111-12
(Iowa 2003). In coming to that conclusion, we did not apply the Strickland
prejudice requirement but instead we presumed prejudice. In doing so, we
said: “Because the right to a jury trial is so fundamental to our justice
system, we conclude this is one of those rare cases of a ‘structural’
defect in which prejudice is presumed.” Id. at 112. It goes without
saying that a failure to inform the defendant of the maximum possible
punishment renders the plea defective. Because liberty is such a
fundamental aspect of the Due Process Clause, I would similarly consider
such a plea a structural defect in which prejudice should be presumed.
Moreover, the prejudice resulting from such a plea is the relinquishment of
a constitutional right to a trial by jury, Meier v. State, 337 N.W.2d 204,
208 (Iowa 1983), which is fundamental to our justice system, Stallings, 658
N.W.2d at 112. Although the majority mentions Stallings, it neglects to
answer the question why the failure to advise a defendant of the maximum
possible punishment in a plea is not a structural defect. As in Stallings,
Straw waived his right to a jury trial in a plea process that was
constitutionally defective.
 What I am suggesting is not novel. In Pennsylvania v. Persinger, a
case we cited with approval in White, the trial court imposed consecutive
sentences following a plea that was devoid of any mention of potential
consecutive sentences. 615 A.2d 1305, 1307 (Pa. 1992). The superior court
affirmed. Id. at 1306. The sole issue on appeal to the supreme court of
Pennsylvania was whether trial counsel was ineffective for failing to file
a motion to withdraw defendant’s guilty plea. Id. Although the defendant
was informed of the maximum sentence possible on each count, the defendant
was not informed that the sentences could be imposed consecutively. Id. at
1307. Reversing and remanding the case for trial, the supreme court of
Pennsylvania stated:

 Requiring the trial court to tell the defendant that the sentences may
 be imposed consecutively and what the total aggregate sentence could
 be will not significantly lengthen the colloquy or place any undue
 burden on the court. Accordingly, we find that the absence of this
 inquiry from the transcript renders the colloquy defective. As a
 result, appellant has suffered a manifest injustice. We find
 therefore, that appellant’s claim has merit. We also find that
 because there were adequate grounds for withdrawal of appellant’s
 plea, counsel’s failure to seek withdrawal of appellant’s plea was
 prejudicial to appellant.

Id. at 1308 (emphasis added); accord Pennsylvania v. Jones, 640 A.2d 1330,
1335 (Pa. Super. Ct. 1994). A later superior court decision characterized
this holding as a per se prejudice rule. Pennsylvania v. Stanley, 830 A.2d
1021, 1026 (Pa. Super. Ct. 2003); see also North Dakota v. Schumacher, 452
N.W.2d 345, 347-48 (N.D. 1990) (on appeal per se prejudice rule was applied
in the context of a claim for ineffective assistance of counsel because the
trial court failed to abide by the statutory rule requiring the court to
advise the defendant of the mandatory minimum punishment, if any, and the
maximum possible punishment; defendant was not informed at the plea of the
mandatory minimum sentence required by the charge to which he pleaded
guilty); Hinton v. Hill, 105 P.3d 923, 926 (Or. Ct. App. 2005) (court
applied per se prejudice rule in the context of a claim for ineffective
assistance of counsel because the trial court failed to advise the
defendant of the maximum punishment required by the charges to which she
pleaded guilty).
 In the course of its opinion, the court in Persinger quoted with
approval this passage from one of its earlier cases:

 “[T]he decision to plead guilty to a charge could not be accepted as
 being knowingly and intelligently entered without an assurance that
 the accused fully comprehended the maximum punishment that might be
 imposed for his conduct. This information is obviously an integral
 part of the knowledge that should be possessed by one who is called
 upon to make the difficult decision whether to surrender his right to
 trial and to place himself at the mercy of the sentencing court. No
 civilized society could tolerate the waiver of such basic rights from
 one who was unaware of or misinformed as to such a critical fact.”

615 A.2d at 1307 (citation omitted); see also Henry v. Alabama, 639 So. 2d
583, 584 (Ala. Crim. App. 1994) (holding that defendant’s right to know the
possible sentence he faces is absolute and the fact he was misinformed
about the minimum and maximum sentence rendered his plea involuntary and
the error was not harmless); cf. Kleppinger v. Florida, 884 So. 2d 146, 148
(Fla. Dist. Ct. App. 2004) (“A defendant is inherently prejudiced by his
inability, due to his counsel’s neglect, to make an informed decision
whether to plea bargain.”). This passage from Persinger suggests the
Pennsylvania Supreme Court considers the failure to advise the defendant of
the maximum possible punishment that might be imposed a structural defect
in the plea process.
 That brings me to Hill v. Lockhart, 474 U.S. 52, 106 S. Ct. 366, 88 L.
Ed. 2d 203 (1985), a decision upon which the majority heavily relies. In
Hill, the defendant filed a federal habeas corpus action alleging that his
guilty plea was involuntary because he was misinformed as to his parole
eligibility. 474 U.S. at 54-55, 106 S. Ct. at 368, 88 L. Ed. 2d at 207.
He claimed he was told that if he pleaded guilty he would become eligible
for parole after serving one-third of his sentence when in fact to become
eligible for parole he was required to serve one-half of his sentence. Id.
at 55, 106 S. Ct. at 368, 88 L. Ed. 2d at 207. The question was whether
the defendant was entitled to a hearing on his habeas corpus action. The
majority concluded that the defendant failed to allege the type of
prejudice necessary to satisfy the Strickland test. To satisfy that test,
the court reasoned that the defendant had to allege in his habeas corpus
action that had counsel correctly informed him about his parole eligibility
date, he would not have pleaded guilty and would have insisted on going to
trial. Because the defendant did not make such allegations, the Court
concluded that his claim of ineffective assistance of counsel failed as a
matter of law. As a result, he was not entitled to a hearing. Id. at 60,
106 S. Ct. at 371, 88 L. Ed. 2d at 211.
 It is interesting to note that the concurring opinion found no
professional error—the first prong of the Strickland test. In support of
this finding, the concurring opinion noted the record was clear that the
defendant did not advise his attorney of a previous felony conviction which
required defendant under state law to serve one-half rather than one-third
of his sentence. Id. at 61-62, 106 S. Ct. at 371-72, 88 L. Ed. 2d at 212
(White, J., concurring). Additionally, the concurring opinion found that
the record supported sufficient facts to show there was a reasonable
probability that, but for counsel’s errors, the defendant would not have
pleaded guilty and would have insisted on going to trial. In sum, because
the defendant did not allege facts showing professional error, the
concurring opinion concluded the Court should deny the hearing for that
reason. Id. at 62-63, 106 S. Ct. at 372-73, 88 L. Ed. 2d at 212-13.
 In any event, I think Hill is distinguishable. In Hill, the
misinformation by the defendant’s attorney was about parole eligibility
rather than on the maximum possible punishment a defendant faces in
pleading guilty. Parole eligibility is a collateral consequence of a plea.
 Kinnersley v. State, 494 N.W.2d 698, 700 (Iowa 1993), overruled on other
grounds by State v. Kress, 636 N.W.2d 12, 20 (Iowa 2001). The maximum
possible punishment a defendant faces in pleading guilty is a direct
consequence of a plea. Id. A court need not inform the defendant of
collateral consequences of a plea while it must inform the defendant of the
direct consequences of a plea. Id. The majority fails to mention and
explain away this distinction.
 There is a vast difference between a court’s failure to advise a
defendant about a maximum possible punishment and an attorney’s
misinformation about parole eligibility. Hill and Kress are good examples.
 The defendant in Hill was facing a possible life sentence on charges of
first-degree murder and theft. 474 U.S. at 53-54, 106 S. Ct. at 368, 88 L.
Ed. 2d at 207. His counsel negotiated a plea bargain under which the State
would recommend concurrent prison sentences of thirty-five years for the
murder charge and ten years for the theft charge. Id. at 54, 106 S. Ct. at
368, 88 L. Ed. 2d at 207. The trial judge sentenced the defendant in
accordance with the plea agreement. Id. Therefore, notwithstanding the
attorney’s alleged misinformation about parole eligibility, the defendant
by pleading guilty at least had the chance to avoid a life sentence. So
the defendant indeed had an incentive to plead guilty.
 Contrast that situation with one in which the court misinforms or does
not inform the defendant about the maximum possible punishment in violation
of our rule and thereafter the defendant pleads guilty. That was exactly
the situation in Kress. In Kress, the State charged the defendant with
procurement of a prescription drug by forgery, which carried a ten-year
sentence. 636 N.W.2d at 15, 17. There was no plea agreement, id. at 16,
and therefore Kress had no incentive to plead guilty. In fact, the State
also alleged that Kress had been previously convicted of a drug offense
that enhanced the penalty. Id. at 16-18. Because of a previous drug
conviction, Kress would have to serve one-third of the indeterminate
sentence. Id. at 17-18. The court incorrectly informed Kress that the
sentencing judge could waive the one-third mandatory minimum sentence
requirement. Id. at 16. Kress then pleaded guilty. Id. Later, the
district court imposed a ten-year indeterminate sentence and required Kress
to serve at least one-third of her sentence. Id.
 By pleading guilty, Kress gave up her constitutional right to a jury
trial based on the incorrect information given at the plea. Id. at 22.
Had Kress known the true facts, she had nothing to lose and everything to
gain by going to trial because a jury may have found her not guilty. What
possible reason would there have been to preserve Kress’s claim of
ineffective assistance of counsel on the prejudice prong of the Strickland
test rather than just setting aside the plea and judgment of conviction and
allowing her to plead anew? The result would have been the same in either
case. It all boils down to this: “A guilty plea must represent the
informed, self-determined choice of the defendant among practicable
alternatives; a guilty plea cannot be a conscious, informed choice if the
accused” does not know of or is misinformed about the maximum punishment he
or she faces by pleading guilty. Hawkman v. Parratt, 661 F.2d 1161, 1170
(8th Cir. 1981).
 The majority faults Kress because it fails to consider the Hill
analysis. At the time we decided Kress, the State apparently did not
believe Hill was applicable because it did not even mention Hill in its
brief.
 The other distinguishing factor is the structural defect aspect
surrounding a failure to inform a defendant of the maximum possible
punishment, which I mentioned earlier. In Hack, which was decided eleven
years after Hill, we applied a per se prejudice rule in the context of an
ineffective assistance of counsel claim arising out of a plea in which
there was a lack of factual basis. In that case we did not even consider
Hill. The Pennsylvania Supreme Court likewise decided Persinger after Hill
and applied a per se prejudice rule in the context of an ineffective
assistance of counsel claim arising out of a plea in which the maximum
possible punishment was not mentioned. It too did not consider Hill.
 Under the per se prejudice approach, I suggest the following. I
would, as we did in Kress, 636 N.W.2d at 22, presume prejudice, vacate the
judgment of sentence and conviction, and remand the case to allow the
defendant to plead anew. This disposition, of course, would, in cases like
the one before us, invalidate a plea bargain involving the dismissal of
other charges. I would therefore on remand allow the State to reinstate
the charges, if it so desired, and to file any additional charges
supportable by the available evidence. In answer to the majority’s second-
bite-at-the-apple claim, allowing the State to reinstate charges and file
additional charges should eliminate any incentive on the part of defendants
to claim they were not advised of the maximum possible punishment when in
fact they were so advised. These remedies are analogous to the remedies we
apply in claims of ineffective assistance of counsel based on a lack of
factual basis. Moreover, contrary to the majority’s conclusion, these
remedies preserve the integrity of the process while at the same time they
serve the purpose and spirit of rule 2.8(2)(b).
 Finally, the approach I suggest would conserve judicial resources by
eliminating a postconviction hearing and an appeal in the event the
defendant lost in the postconviction process. This makes far more sense
than the approach the majority takes.
 For all of these reasons, I would vacate the court of appeals
decision; I would also vacate Straw’s judgment of sentence and conviction
and remand to allow him to plead anew. In addition, I would also allow the
State on remand to reinstate the charges it dismissed as part of the plea
bargain and to file any additional charges supportable by the available
evidence.
 Wiggins, J., joins this dissent.

-----------------------
 [1]For the third-offense possession charge, the State recommended a
five-year prison sentence, a fine of $750, and a 180-day license revocation
along with other related court costs. For the driving-while-barred charge,
the State recommended a concurrent two-year prison sentence and a $500
fine.
 [2]Prior to the enactment of rule 2.24(3), a defendant could directly
appeal his or her conviction based on a guilty plea. See State v. Fluhr,
287 N.W.2d 857, 860 (Iowa 1980) (reversing guilty plea conviction on direct
appeal because the court did not substantially comply with procedural
guidelines when accepting the guilty plea).
 [3]The State claims Straw knew there was a possibility the sentences
could be consecutive because the plea agreement recommended concurrent
sentences. This argument is similar to the argument the State made in
State v. White, 587 N.W.2d 240, 246 (Iowa 1998). In White, the defendant
pled guilty to two counts of possession of methamphetamine with intent to
deliver, but the district court failed to inform the defendant, prior to
the acceptance of his guilty plea, that consecutive sentences could be
imposed. 587 N.W.2d at 246. The State argued the district court satisfied
rule 2.8(2)(b) by informing the defendant what the penalty was for each
charge, because the defendant could “figure out by implication that the
sentences could be ordered to be served consecutively.” Id. We rejected
this argument because it left the defendant “partially informed, but
uninformed of the true maximum possible punishment of twenty years
imprisonment coming from consecutive sentences.” Id. We reject the
State’s similar argument in this case.
 [4]The rare instances where we presume prejudice are easily
distinguishable from the present case. We presume prejudice when the
defendant is denied his or her right to a jury trial because the right to a
jury trial is one of only a handful of “important” constitutional rights
that are fundamental to our justice system. State v. Stallings, 658 N.W.2d
106, 112 (Iowa 2003) (citing McGurk v. Stenberg, 163 F.3d 470, 474 (8th
Cir. 1998) (“Despite the strong presumption that constitutional error can
be harmless, we conclude that the denial of a jury trial is a structural
error subject to automatic reversal.”) (Internal quotations and citations
omitted.)). We also presume prejudice when there was no factual basis for
the plea because we do not want to convict people for crimes they did not
commit. State v. Hack, 545 N.W.2d 262, 263 (Iowa 1996); see State v.
Sanders, 309 N.W.2d 144, 145 (Iowa Ct. App. 1981). In the present case,
neither of these pressing concerns exists. Straw does not contend he did
not commit the crime, and he does not contend he was denied the right to
trial. Instead, he argues his decision not to go to trial would have been
different had he known the maximum punishment for the crime he committed.
Rather than presume his decision would have been different, Straw ought to
prove that point on his own.
 [5]The prejudice suffered by a defendant who does not know the
potential length of imprisonment for his guilty plea is unique because it
“‘is virtually self-evident that a defendant’s decision to plead guilty . .
. is a grave and personal judgment, which a defendant should not be allowed
to enter without full comprehension of possible consequences of conviction
by such plea.”’ White, 587 N.W.2d at 246 (quoting State v. Irish, 394
N.W.2d 879, 884-85 (Neb. 1986) (Shanahan, J., dissenting)). Anyone
“unaware that the term or duration of incarceration acutely affects a
defendant’s decision regarding a guilty . . . plea . . . is oblivious to
one of the realities in our system for efficient criminal justice.” Id.