STATE of Iowa, Appellee,

v.

Theresa Lynne LOYE, Appellant.

No. 01–1456.

Supreme Court of Iowa.

Oct. 8, 2003.

Linda Del Gallo, State Appellate Defender, and Tricia A. Johnston, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Karen Doland, Assistant Attorney General, Richard Crowl, County Attorney, and Martha A. Heinicke, Assistant County Attorney, for appellee.

TERNUS, Justice.

The defendant, Theresa Loye, pled guilty to possession of marijuana, two counts of possession of burglar's tools, ongoing criminal conduct, and seven counts of third-degree burglary. After an unsuccessful effort in drug court, she was sent to prison on consecutive sentences totaling more than sixty-four years. Loye appealed, claiming her guilty plea was invalid and her sentences were illegal. The court of appeals dismissed Loye's appeal, agreeing with the State that Loye had waived her right to appeal.

On further review, we conclude Loye did not waive her right to appeal. Proceeding to the merits, we hold that Loye's guilty plea was invalid and, therefore, we vacate her guilty plea, reverse the judgment of conviction, and remand the case for further proceedings.

## I. Background Facts and Proceedings.

On December 13, 2000, Loye was charged with possession of marijuana in violation of Iowa Code section 124.401(5) (1999). A few months later she and another woman were caught breaking into a moneybox inside a washing machine in the laundry room of an apartment complex. Not far from where they were apprehended, the police discovered a bag containing a pair of bolt cutters, a drill, drill bits, and other tools. A subsequent investigation revealed that moneyboxes in six additional laundry rooms at the same apartment complex had been opened by drilling the locks. Loye was charged with third-degree burglary in violation of Iowa Code section 713.6A (2001) and possession of burglar's tools in violation of Iowa Code section 713.7. Another trial information subsequently filed charged Loye with six additional counts of third-degree burglary, another count of possession of burglar's tools, and a count of ongoing criminal conduct in violation of Iowa Code sections 706A.1, 706A.2(4), and 706A.4.

On June 21, 2001, Loye submitted a guilty plea to all charges and was accepted into drug court. The district court informed Loye that if she successfully completed the drug court program, "all of these charges will be dismissed"; if she failed, the court would "stack the penalties." In addition, the court told Loye that her agreement to be transferred to drug court meant that she waived her right to appeal. The court also engaged the defendant in a colloquy for the ostensible purpose of establishing a factual basis for Loye's guilty plea, informing the defendant of the constitutional rights she would be giving up by pleading guilty, and informing Loye of the charges to which she was pleading and the punishment for those charges. After accepting Loye's guilty plea, the court transferred her case from the criminal district court to drug court for future supervision.

Loye was not successful in the drug court program and was brought before the district court again on August 30, 2001. At that time, the court imposed consecutive sentences on all charges, for a total term of imprisonment of sixty-four and one-half years. Loye filed this appeal.

## II. *Issues on Appeal.*

Loye raises several complaints concerning her conviction and sentencing. We address only one, as we find it dispositive. The defendant claims her guilty plea was not entered knowingly and intelligently because the court did not fully inform her of the nature of the charges to which she was pleading guilty and the potential penalties. As our subsequent discussion will explain, we find merit in this contention. Because this conclusion requires that Loye's guilty plea be set aside, we need not address her other claims of error concerning her guilty plea nor the alleged illegality of her sentencing.[1]

While denying the defendant's plea was uninformed, the State asserts preliminarily that this court does not have jurisdiction of Loye's appeal. The State contends a final judgment was entered on June 21, 2001, and Loye was required to appeal within thirty days from that date. Because Loye's notice of appeal was filed beyond this thirty-day period, her appeal, claims the State, is untimely. In addition, the State claims Loye affirmatively waived her right to appeal at the June hearing. Finally the State contends Loye did not preserve her right to challenge the adequacy of her guilty plea on appeal because she did not challenge her plea in the district court. We first address the issues affecting Loye's right to maintain this appeal, and then discuss the validity of her guilty plea.

## III. *Timeliness of Appeal.*

The timeliness of Loye's appeal depends on whether final judgment was imposed at the hearing on June 21, 2001, when Loye entered her guilty plea, or on August 30, 2001, when Loye was before the court after being expelled from the drug court program. The State contends the court imposed a suspended sentence at the June hearing and consequently that order constituted a final judgment from which Loye was required to appeal within thirty days.[2] *See* Iowa R.App. P. 6.5(1) (stating notice of appeal must be filed within thirty days of court's order). The August proceeding, asserts the State, was held simply to revoke Loye's probation and execute the previously determined sentence, a ruling that is subject to challenge in a postconviction relief action. *See State v. Rheuport*, 225 N.W.2d 122, 123

1. We note the State has conceded error on Loye's claim that the trial court did not establish a factual basis for her plea. *See* Iowa R.Crim. P. 2.8(2)(*b*) (stating court "shall not accept a plea of guilty without first determining that the plea ... has a factual basis"). The State suggests that we remand the case to the district court for a hearing to determine whether a factual basis exists. *See State v. Schminkey*, 597 N.W.2d 785, 792 (Iowa 1999) (stating where it is possible that factual basis may exist, proper remedy is to vacate sentence and remand for further proceedings to allow State to show a factual basis); *Ryan v. Iowa State Penitentiary*, 218 N.W.2d 616, 620 (Iowa 1974) (holding lack of factual basis for plea does not automatically require that plea be set aside; factual basis may be shown upon remand). We decline to remand this case for this purpose, however, because other defects in the plea require that the plea be set

aside. Under these circumstances, there is no point in allowing the State to establish a factual basis for a plea that is illegal in any event.

2. The State makes several references in its brief to the fact that Loye was "sentenced to the drug court program." In the event we have misapprehended the State's argument on this issue and the State is actually arguing that final judgment was rendered at the June hearing because Loye was "sentenced" to drug court, we reject this characterization of what happened at the plea proceeding. The drug court program is not a "sentence." Rather, successful completion of the drug court program is a condition of probation. Thus, it is a misnomer to say that a defendant is "sentenced" to the drug court program.

(Iowa 1975) (holding postconviction procedures are the exclusive remedy for defendant's challenge to revocation of probation).

The defendant disagrees with the State's characterization of the June hearing. She alleges the court entered a deferred judgment at that time, which is not a final order. *See State v. Stessman,* 460 N.W.2d 461, 462 (Iowa 1990) ("An order deferring judgment is interlocutory and cannot meet the final judgment requirement."). Final judgment, she asserts, was rendered at the August hearing when the court imposed sentence.

■ "Final judgment in a criminal case means sentence. The judgment is final for the purpose of appeal when it terminates the litigation." *State v. Coughlin,* 200 N.W.2d 525, 526 (Iowa 1972). We recently noted the distinctions between the various sentencing options available to the court in a criminal matter:

> Following a plea or verdict of guilt, a court may, subject to exceptions, defer judgment, defer sentence, or suspend sentence. When judgment is deferred, the defendant is placed on probation without entry of a judgment. If the probation is successfully completed, the defendant is discharged and no judgment is entered. If probation fails, the judgment is entered and the court is permitted to impose any authorized sentence. This option allows a defendant to avoid a record of a conviction. When the sentence is deferred, a defendant is placed on probation at or after pronouncement of judgment, but without any sentence imposed. The court enters an adjudication of guilty, but the sentence is deferred to a later time. This delay allows the court to consider sentencing in the future after the court has had an opportunity to view a defendant's conduct on probation. The court retains

the power to impose "any sentence it originally could have imposed." Finally, when a sentence is suspended, a defendant is placed on probation following the pronouncement of the sentence. The sentence is imposed, but execution of the sentence is suspended. This option allows a defendant to avoid a known sentence of incarceration or other punishment based on successful completion of probation. Any revocation of the suspended sentence results in the execution of the sentence previously pronounced.

*State v. Thomas,* 659 N.W.2d 217, 221 (Iowa 2003) (citations omitted). To determine whether entry of a judgment of conviction, imposition of sentence, or execution of sentence was delayed pending Loye's successful completion of probation, namely, the drug court program, we turn to an examination of the record.

At the June hearing, the court specifically told the defendant that upon successful completion of the drug court program, the charges against her would be dismissed. Similarly, the court informed her she had an opportunity to "expunge all of the criminal history" by completing the program. The court also advised Loye that if she decided within two weeks that she did not want to remain in drug court, she would "be transported back to district court and [would be] prosecuted through to completion." These statements indicate the defendant was receiving a deferred judgment, certainly not a suspended sentence.

In the actual order entered by the court after this hearing, the court noted the "[d]efendant ... entered guilty pleas" and "[t]he [c]ourt accept[ed] defendant's guilty pleas." The court did not state what, if any, sentence had been imposed. Although this order seems to document an adjudication of guilt and a deferral of sentencing, rather than a deferred judgment, it clearly does not support the State's con-

tention that the court imposed a suspended sentence.

The State points out that the court "exonerated" Loye's appearance bond at the June hearing, transferred the case to drug court, and relieved trial counsel "from further representation." The State argues these actions indicate the court considered its involvement to be at an end, signifying a final adjudication. Regardless of these actions, however, the fact remains that the court did not impose a sentence in June, which is the determinative fact in assessing the finality of a criminal proceeding.

The record from the August hearing also supports a conclusion that Loye was sentenced in August, not June. In commencing his colloquy with Loye at the August proceeding, the court stated, "First, we'll *sentence* a couple of people to go to the penitentiary." (Emphasis added.) In addition, the court's August 30, 2001, calendar entry states that the defendant "appeared with counsel ... *for sentencing.*" (Emphasis added.) The entry continues with a separate pronouncement for each charge that the "defendant is hereby *sentenced*" or "is *sentenced*" to a specific term in the penitentiary or the county jail. (Emphasis added.) There is no reference to any prior suspended sentence. We think this record shows the court was imposing sentence for the first time, rather than executing a previously pronounced sentence.

Based on the documentation of the June and August court proceedings, we reject the State's contention that a final judgment was rendered on June 21, 2001. Final judgment was entered on August 30, 2001, when the court sentenced the defendant. Consequently, the defendant's notice of appeal, filed within thirty days of final judgment, was timely.

## IV. *Waiver of Right to Appeal.*

**■** **A.** *Contentions.* The parties dispute whether the defendant waived her right to appeal when she pled guilty in June 2001. Loye argues the record made at the guilty plea proceeding does not establish a waiver. The State contends that Loye's waiver of her right to appeal was part of a plea bargain she made with the county attorney. Although no written documentation of a plea agreement was submitted at the June hearing, the State claims the transcript of that proceeding reflects this agreement. In the event this court concludes the record does not show a waiver, however, the State asks that the case be remanded so the prosecutor can supplement the record with any documents executed by Loye as part of her agreement to plead guilty.

**B.** *Discussion.* We have held that a defendant may waive his or her right to appeal. *State v. Hinners,* 471 N.W.2d 841, 845 (Iowa 1991). Although the right to appeal is purely statutory, we indicated in *Hinners* that a waiver of that right would be held to the same standards as the waiver of a constitutional right. *Id.* at 843 (noting that although the right to appeal "is statutory and not constitutional[,] ... once the right to appeal has been established, 'these avenues must be kept free of unreasoned distinctions that can only impede open and equal access to the courts' " (citation omitted)).

**■** Pursuant to these standards, the State bears the burden to prove Loye has waived her right to appeal. *See State v. Washburne,* 574 N.W.2d 261, 265 (Iowa 1997). Although a defendant can waive the right to appeal as part of a plea bargain, any such waiver must be voluntary, knowing and intelligent. *Hinners,* 471 N.W.2d at 845. The problem in the present case is that the record does not show Loye waived her right to appeal, much less

that she did so voluntarily, knowingly, and intelligently.

A review of the record in this case reveals the defendant's right to appeal was mentioned only once at the plea proceeding. During its colloquy with the defendant, the court stated:

I'm going to move through these [charges] and then I'll come back and explain your constitutional rights that you give up by pleading guilty *as well as advising you at the present time that you waive all of your rights to—when you come into drug court—to appeal to the supreme court.* You waive your right to complain about being rejected from drug court if you screw up and don't follow the rules and are taken out of the drug court program. So you're giving up a whole lot when you come in here.

No mention was made that a waiver of appeal rights was part of a bargain made by the defendant with the county attorney. To the contrary, the implication of the statements made by the court was that a defendant automatically gives up any right to appeal upon acceptance into drug court. Such an implication is, of course, untrue, and the trial court's mere statement to that effect, even with the defendant's apparent acquiescence, does not amount to a waiver. *See State v. Kirchoff,* 452 N.W.2d 801, 803 (Iowa 1990) (holding defendant's agreement with trial court's incorrect statement that defendant had waived his right to file a motion in arrest of judgment did not operate as a waiver of that right).

▆▆▆ Contrary to the court's statement, a defendant does not automatically waive the right to appeal by pleading guilty and entering drug court. The right to appeal is waived only if such a waiver is an express element of the particular agreement made by that defendant. *See Hinners,* 471 N.W.2d at 845 ("we hold that a defendant may *expressly* waive the right to appeal in a plea bargain agreement" (emphasis added)). No showing was made here that any plea agreement reached between Loye and the prosecutor included a waiver of Loye's right to appeal. *See State v. Oliver,* 588 N.W.2d 412, 415 (Iowa 1998) (stating that State's intimation that a plea agreement existed was, in the absence of further proof, without merit); *see also Hinners,* 471 N.W.2d at 845 (stating court will "not infer a waiver from a silent record").

The colloquy between the court and the defendant is also deficient because the court made no inquiry as to whether the defendant knew she had the right to appeal, whether she voluntarily waived that right, and whether she knew the consequences of giving up that right. *See State v. Caldwell,* 828 A.2d 765, 768 (Maine 2003) (holding waiver of rights in context of drug court process, while permissible, must still be knowing, intelligent, and voluntary); *cf. State v. Tovar,* 656 N.W.2d 112, 116 (Iowa) (stating waivers of constitutional rights "not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences"), *cert. granted,* —— U.S. ——, 124 S.Ct. 44, 156 L.Ed.2d 703 (2003). While it is true the court mentioned that the defendant would not be able to complain about being rejected from drug court, should that occur, the court did not tell Loye that another consequence of the waiver of appeal rights would be an inability to challenge her guilty pleas. Under these circumstances, we do not think the State has carried its burden to prove by a preponderance of the evidence that Loye waived her right to appeal.

▆▆▆ C. *Disposition.* That brings us to the State's request that we remand this case to permit the prosecutor to introduce

the documents allegedly executed by Loye as part of her plea agreement. Initially, we point out that our rules of criminal procedure require that any plea agreement be disclosed "in open court *at the time the plea is offered.*" Iowa R. Crim. P. 2.10(2) (emphasis added); *accord* Iowa R.Crim. P. 2.8(2)(*c* ) ("The terms of any plea agreement shall be disclosed of record as provided in rule 2.10(2)."). We assume the prosecutor was aware of this requirement and, had Loye's guilty plea been the product of a plea bargain, that any such agreement would have been made a part of the record. Its absence from the record leads us to conclude no plea agreement existed.

■ Even if we ignore the State's failure to comply with rule 2.10(2), production of a written plea agreement that includes an express waiver of Loye's right to appeal would not be sufficient to remedy the deficiencies in the State's proof. As we stated in *Washburne*, "[a]n express written waiver is not enough to establish waiver." 574 N.W.2d at 265. There must be an additional showing that any such waiver was voluntary, knowing and intelligent. *Id.; Hinners*, 471 N.W.2d at 845 ("[W]e hold that a defendant may expressly waive the right to appeal in a plea bargain agreement *as long as* the defendant voluntarily, knowingly, and intelligently waives the right." (Emphasis added.)). As we have already pointed out, that showing has not been made here.

In conclusion, we reject the State's request to remand this case to allow the prosecutor to supplement the record with the parties' alleged plea agreement. Given our conclusion the State has not demonstrated a waiver of Loye's right to appeal, we hold Loye had the right to appeal the judgment of conviction and her sentences. Consequently, we proceed to the merits of her appeal.

## V. *Validity of the Defendant's Guilty Plea.*

■ A. *Error preservation.* The State contends the defendant may not challenge her guilty plea on appeal because she did not file a motion in arrest of judgment contesting the legality of her plea in the district court. *See* Iowa R.Crim. P. 2.24(3) ("A defendant's failure to challenge the adequacy of a guilty plea proceeding by motion in arrest of judgment shall preclude the defendant's right to assert such challenge on appeal."); *State v. Antenucci*, 608 N.W.2d 19, 19 (Iowa 2000) (same). The defendant responds that this requirement does not apply here because the trial court did not adequately advise her of the necessity of filing a motion in arrest of judgment to preserve any error in the guilty plea proceeding. *See* Iowa R.Crim. P. 2.8(2)(*d* ) ("The court shall inform the defendant that any challenges to a plea of guilty based on alleged defects in the plea proceedings must be raised in a motion in arrest of judgment and that failure to so raise such challenges shall preclude the right to assert them on appeal."); *State v. Oldham*, 515 N.W.2d 44, 46 (Iowa 1994) (stating court's failure to comply with rule 2.8(2)(*d* ) "operates to reinstate the defendant's right to appeal the legality of his plea"). With the issues so framed, we examine the record to determine whether the district court complied with rule 2.8(2)(*d* ).

The State maintains the district court substantially complied with the rule when it imparted the following information to Loye:

At the outset if you decide within a two-week period from today that you don't want to be in drug court—we will release you from drug court and you'll be transported back to district court and your case will be prosecuted through to

completion which is the option we give everybody. The reason for that is because we really only want people here in drug court who want to be here.

Is that what you want to do?

The defendant responded, "I want the help. I want a different life when it's over with."

■ We do not think the court's comments are sufficient to discharge the court's duty under rule 2.8(2)(*d*). Nor do we believe this colloquy manifests a knowing and intelligent waiver by Loye of her right to challenge her guilty plea within forty-five days as permitted by rule 2.24(3)(*b*). *See* Iowa R.Crim. P. 2.24(3)(*b*) (allowing forty-five days to file motion in arrest of judgment). Although we employ a substantial compliance standard in determining whether a trial court has discharged its duty under rule 2.8(2)(*d*), at a minimum the court must ensure the defendant understands the necessity of filing a motion to challenge a guilty plea and the consequences of a failure to do so. *Oldham*, 515 N.W.2d at 46; *State v. Taylor*, 301 N.W.2d 692, 693 (Iowa 1981). The record does not show such an understanding here. The comments of the district court upon which the State relies merely informed Loye that she had two weeks *to withdraw from the drug court program*. This knowledge is not equivalent to an understanding that she had forty-five days *to challenge her guilty plea*. Moreover, the court's comments in no way conveyed the fact that the defendant's failure to file a motion attacking the adequacy of her plea would forfeit her right to challenge the plea on appeal.[3]

Under these circumstances, we conclude the defendant was not satisfactorily informed of the requirements of rule 2.24(3)(*b*). Accordingly, her acquiescence to the judge's statement that she had two weeks to withdraw from the drug court program fails to demonstrate a knowing and intelligent waiver of her rights under this rule. *Cf. State v. Smith*, 300 N.W.2d 90, 91 (Iowa 1981) (holding defendant's voluntary waiver of time for sentencing did not operate as a waiver of defendant's right to move in arrest of judgment because court had not informed defendant of this right as required by rule 2.8(2)(*d*)). Consequently, Loye's failure to file a motion in arrest of judgment does not prevent her from challenging her guilty plea on appeal.

■ B. *Scope of review.* The defendant claims her guilty plea was not made knowingly and intelligently. Because this claim implicates the Due Process Clause of the Fourteenth Amendment to the United States Constitution, our review is de novo. *See Thomas*, 659 N.W.2d at 220.

■ C. *Discussion.* Although the defendant offers several reasons why her plea was not knowing and intelligent, we need only address her argument that the district court did not comply with rule 2.8(2)(*b*)(1)-(2) by adequately informing her of the nature of the charges to which she was pleading guilty and the potential penalties for these crimes. We start with the governing legal principles.

■ The Due Process Clause requires that a guilty plea be voluntary. *See State v. Fluhr*, 287 N.W.2d 857, 863 (Iowa 1980), *overruled on other grounds by Kirchoff*, 452 N.W.2d at 804–05. "To be truly voluntary, the plea must not only be free from compulsion, but must also be knowing and intelligent." *Id.* Consequently, a

---

**3.** The State suggests the defendant agreed to a two-week period to withdraw from drug court and assert any challenge to her guilty plea as part of a plea bargain with the prosecutor. As we have already held, however, there is no proof of a plea agreement in the record.

defendant must be aware not only of the constitutional protections that he gives up by pleading guilty, but he must also be conscious of "the nature of the crime with which he is charged" and the potential penalties. *Id.*

Rule 2.8(2)(*b*) codifies this due process mandate. *See State v. Mensah,* 424 N.W.2d 453, 455 (Iowa 1988); *see also Kirchoff,* 452 N.W.2d at 803–04. The rule provides in pertinent part:

> *b. Pleas of guilty.* The court may refuse to accept a plea of guilty, and shall not accept a plea of guilty without first determining that the plea was made voluntarily and intelligently and has a factual basis. Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
>
> (1) The nature of the charge to which the plea is offered.
>
> (2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered.
>
> . . . .

Iowa R.Crim. P. 2.8(2)(*b*)(1)-(2).

■ As noted earlier, we apply a substantial compliance standard in assessing whether the trial court has adequately informed the defendant of the items listed in the rule. *State v. Myers,* 653 N.W.2d 574, 578 (Iowa 2002). "Substantial compliance" requires at a minimum that the defendant be informed of these matters and understand them. *State v. Kress,* 636 N.W.2d 12, 21 (Iowa 2001).

■ In applying this standard to the requirement that the defendant know and understand the nature of the charges against him, we have held the court need not review and explain each element of the crime *if* it is "apparent in the circumstances the defendant understood the nature of the charge." *Smith,* 300 N.W.2d at 92. Moreover, if "the record shows the court gave misleading or inaccurate advice concerning the nature of the offense, the requisite understanding cannot be found." *Id.* A clearer understanding of these principles can be gained from a comparison of this court's decision in the *Smith* case with the court of appeals' decision in *State v. Ludemann,* 484 N.W.2d 611, 612 (Iowa Ct.App.1992).

In *Smith,* the defendant pled guilty to second-degree theft based on an allegation that he uttered false checks on two banks and received cash or property having a value in excess of $500. 300 N.W.2d at 92. The defendant claimed on appeal the district court had failed to determine that he understood he was guilty only if he knew at the time he passed the checks that they would not be paid upon presentment to the banks. *Id.* During the plea proceeding, the defendant acknowledged that he was pleading guilty because he wrote checks on a bank account in which he had insufficient funds to cover the checks and on another bank where he did not even have an account. *Id.* The court then asked the defendant if he understood the State would have to prove he "did not knowingly have an understanding with the bank so that the checks would be honored." *Id.* The defendant said he understood. *Id.* This court concluded on appeal that even though the trial court did not expressly identify the knowledge element the State had to prove, the defendant was adequately advised of the nature of the crime because he understood the charge would require proof that he knew the checks would not be paid when presented. *Id.*

In contrast, in *Ludemann,* the court of appeals determined the trial court failed to substantially comply with the requirement

that the defendant know and understand the nature of the charges against him. 484 N.W.2d at 613. In that case the defendant pled guilty to second-degree burglary. *Id.* at 612. In taking his plea, the trial court confirmed that the defendant understood second-degree burglary was a class C felony. *Id.* at 613. The court also asked the defendant's attorney whether he had explained the elements of the offense to his client and what the State would have to prove. *Id.* The defendant's attorney affirmed that he had done so and that the defendant understood. *Id.* The court of appeals held this colloquy was not sufficient:

> [The defendant's] decision to enter a plea did not relieve the trial court of its duty to inform him of the nature of the offense, including the element of specific intent. Additionally, a "court may not abrogate or delegate to anyone, including the attorney for the accused, the duty to determine defendant's knowledge of the charge, appreciation of legal consequences of a guilty plea, whether it is voluntarily entered, or [the] existence of facts supporting it."

*Id.* (citation omitted).

In reviewing the transcript of Loye's plea hearing, we conclude the degree of inquiry made by the trial court here is not much more than that found deficient in *Ludemann.* With respect to the possession charge, the court told the defendant that she was charged with possession of a controlled substance, marijuana, in violation of section 124.401(5), a serious misdemeanor. The court asked Loye whether she "possess[ed] marijuana ... at the time [she] was apprehended," but did not otherwise engage the defendant in any discussion of the elements of the charge. Loye was not informed of the penalty for this offense.

The colloquy on the possession-of-burglar's-tools charges was similarly deficient: the court stated the charge, identified the code section violated, and indicated the crime was an aggravated misdemeanor. There was no further discussion with respect to the elements of this offense or what the State would have to prove, nor was the penalty that would result from conviction mentioned.

With respect to the ongoing criminal conduct charge, Loye was informed of the code section violated, and that it was a class B felony, "a 25–year offense." The same type of information was offered on the burglary charges: the court identified the code section violated and told Loye third-degree burglary was a class D felony. Although the court reviewed the punishment for the burglary charges, the information given the defendant was incomplete and inaccurate. The court told Loye the penalty for third-degree burglary was "five years in the penitentiary *or* as much as a $7500 fine." (Emphasis added.) In fact, the possible penalty was five years imprisonment *and* a fine of at least $750 and not more than $7500. *See* Iowa Code § 902.9. The only discussion of the substance of the ongoing-criminal-conduct charge and the burglary charges was the following exchange:

THE COURT: In that particular instance you're charged with the [ongoing-criminal-conduct] offense because you were involved with allegations that you intended to defraud or to injure another person and that you engaged in a series of acts for financial gain that resulted in a continuous course of conduct; in this particular case, burglary, where you—I assume you tell me if I'm wrong—that you burglarized several properties in order to obtain property that you could either fence or sell in order to raise money to support your drug habit. Is that about right?

THE DEFENDANT: Yeah, it was money.

THE COURT: It was money that you wanted, right?

THE DEFENDANT: It was money that I was stealing.

Although this discussion tends to establish Loye's intent to steal money when she "burglarized several properties," it does not shed any light on the defendant's understanding of what it means to "burglarize" property.

The court's failure to specify the punishments for some of the offenses was somewhat rectified when the court announced its intention to impose consecutive sentences should the defendant fail the drug court program. The court stated: "So you have seven times five is 35 plus 25 making 60 and two aggravated misdemeanors of two years each mean 64 years that you could be sent to the pen—the penitentiary for." Even if we were to accept this mental math as a sufficient explanation of the "maximum possible punishment provided by the statute[s] defining the offense[s]," Iowa R.Crim. P. 2.8(2)(*b*)(2), it fails to encompass the possible fines that could be imposed as part of the sentence.

 The State attempts to excuse the court's deficient plea colloquy by relying on defense counsel's cryptic statement at the hearing that he had talked to Loye about "punishments." The State concludes from this statement that "[t]he terms of Loye's sentence were negotiated by the parties prior to her entry into drug court and Loye was adequately informed of the punishment for each of the offenses." But, as we noted earlier, the fact that a defendant pleads guilty does not relieve the court of its obligation to ensure the defendant's knowledge and understanding of the nature of the charges and the potential punishments. *See Ludemann*, 484 N.W.2d at 613. Nor is the

court's obligation lessened because the defendant's attorney has discussed the same matters with the accused in preparation for the plea hearing. *Id.*

The State also relies on the alleged existence of an underlying plea agreement to supply the deficiencies in the court's oral plea colloquy. The State argues in its brief:

The fact that Loye entered the drug court program pursuant to a plea agreement is important because the extent of the trial judge's explanation and inquiry into defendant's understanding of the plea "varies with the circumstances of each case, including the complexity of the charge and other factors involved in the particular case."

(Citation omitted.) We initially observe there is no record of a plea agreement and the State's repeated references to one are without merit. *See Oliver*, 588 N.W.2d at 415.

 More importantly, a plea agreement, if one exists, would not save Loye's plea to the felony charges. We held in *State v. Hook*, 623 N.W.2d 865 (Iowa 2001), *abrogated in part on other grounds by State v. Barnes*, 652 N.W.2d 466, 468 (Iowa 2002), that a written guilty plea to a felony could not "serve as a substitute for a question the court is required to pose to the defendant directly." 623 N.W.2d at 870. The same reasoning applies to a plea bargain. A written plea agreement is not a substitute for the in-court colloquy required by rule 2.8(2)(*b*) in felony cases.

In conclusion, the trial court did not substantially comply with rule 2.8(2)(*b*)(1)-(2) because it did not confirm that the defendant knew and understood the nature of the charges to which she intended to plead guilty or the maximum possible punishments that might result from her plea. *See Kress*, 636 N.W.2d at 22 (finding lack

of compliance with rule 2.8(2)(*b* ) where defendant was not informed of correct punishment for offense to which she pled guilty). Under these circumstances, Loye's plea was not made knowingly and intelligently and, therefore, was not voluntary. For this reason, the defendant's guilty plea violated the Due Process Clause and must be set aside.

VI. *Summary and Disposition.*

Having concluded the defendant did not waive her right to appeal and that her notice of appeal was timely filed, we hold on the merits that Loye's guilty plea was invalid because the court failed to establish on the record that Loye's plea was entered knowingly and intelligently as required by the Due Process Clause and rule 2.8(2)(*b* ). We will not assume compliance with these requirements simply because the defendant's plea was ostensibly negotiated in exchange for the opportunity to participate in the drug court program.

Because the defendant's guilty plea is illegal, it must be set aside. *Kress,* 636 N.W.2d at 21; *Hook,* 623 N.W.2d at 871. We therefore vacate the defendant's guilty plea and reverse the judgment of conviction. This case is remanded to the district court where the defendant shall be given the opportunity to plead anew to the charges.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT REVERSED AND CASE REMANDED WITH DIRECTIONS.**