# IN THE SUPREME COURT OF IOWA

No. 20–1571

Submitted January 20, 2022—Filed February 25, 2022
Amended March 2, 2022

**STATE OF IOWA,**

Appellee,

vs.

**TIMOTHY MICHAEL BASQUIN,**

Appellant.

Appeal from the Iowa District Court for Fayette County, Alan T. Heavens (hearings); Richard D. Stochl (sentencing), Judges.

Defendant appeals from guilty-plea based conviction on class "C" felony, challenging validity of his written plea of guilty. **AFFIRMED.**

Waterman, J., delivered the opinion of the court, in which all justices joined.

Martha J. Lucey, State Appellate Defender, and Rachel C. Regenold, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

**WATERMAN, Justice.**

This appeal presents a frontal attack on the validity of a key provision in our supervisory orders promulgated in response to the COVID-19 global pandemic. The defendant, represented by counsel, signed and entered his written plea of guilty to a class "C" felony. He brings this direct appeal challenging the validity of that plea.

He argues that the rules of criminal procedure, our precedent, and due process require an in-person plea colloquy in open court and that our supervisory orders temporarily allowing written pleas violate due process and separation of powers. We adopted these supervisory orders as a health and safety measure during the pandemic, and it is worth noting that attorneys in the Office of the State Appellate Defender, which represents the defendant, have often asked our court during the pandemic to be excused from appearing in person before our court for similar health and safety reasons. The State argues the appeal should be dismissed because the defendant cannot establish the requisite good cause to proceed under Iowa Code section 814.6(1)(*a*)(3). On the merits, the State argues that our court's constitutional and inherent authority allowed us to permit written guilty pleas to felonies during the pandemic, that our supervisory orders did not violate due process or the separation of powers, and that we should affirm his plea-based conviction. We retained the appeal to decide those questions.

On our review, we hold the defendant meets the good cause requirement by presenting questions of first impression as to the validity of our supervisory

orders and his written guilty plea to a felony. We uphold our supervisory orders as lawful exercises of our constitutional and inherent authority during the pandemic. We reject his due process and separation of powers challenges to his written plea, and we affirm his conviction.

## I. Background Facts and Proceedings.

On June 6, 2019, Fayette Police Department Chief Benjamin Davis received a phone call at 10:45 p.m. from a former tenant of a rental townhouse who was awaiting the return of his security deposit and came back to see if the house cleaner was doing her job. He looked through a window and saw her with a man inside weighing a "mound of cocaine." Chief Davis called the owners who said they had a house cleaner but no one should be inside the townhouse at that hour.

Police arrived to find two individuals in the garage: Terri Woods and Timothy Basquin. Chief Davis ordered them to remain in the garage while he entered the townhouse to look for other persons. He found baggies containing a white powder, a pipe, and a scale on the kitchen counter. Woods and Basquin were arrested and transported to jail, where Basquin turned over another baggie with a white substance. Police confiscated approximately four grams of methamphetamine in total.

The owners identified Woods as the house cleaner, whom they had not given permission to live there. They knew Woods had a friend who helped her haul trash. The owners gave police permission to search the entire townhouse. The police found clothing, makeup, and bedding that indicated Woods was living

there. Basquin's motorcycle was in the garage. No additional controlled substances were found.

On June 7, at Basquin's initial appearance, the court appointed counsel to represent him. His bond was later modified to permit pretrial release. On June 17, the attorney moved to withdraw due to a breakdown in the attorney–client relationship. The court allowed the withdrawal and appointed new counsel on June 17. The second lawyer moved to withdraw. The court granted the motion and appointed a third attorney to represent Basquin on July 9. The same day, the State filed, and the court approved, the trial information charging Basquin for the manufacture, delivery, or possession with intent to manufacture or deliver a controlled substance—methamphetamine—in violation of Iowa Code section 124.401(1)(*c*)(6) (2019), and burglary in the third degree, in violation of sections 713.6A(1) and 713.1. On July 19, Basquin filed a written arraignment and plea of not guilty and waived his right to speedy trial.

After cycling through five different attorneys and after numerous procedural delays, pursuant to the supervisory order concerning COVID-19, Basquin was permitted to file a written *Alford* guilty plea on November 12, 2020, in lieu of an in-person hearing. In the written plea, Basquin affirmed in writing that he was represented by counsel who was "willing to defend [him] at trial if [he] desire[s] a trial" and that he has been advised of his constitutional and statutory rights. He acknowledged with his initials that he had sufficient time to consult his attorney, he fully understood the proceedings against him, and he understood the charges within the trial information. He admitted in writing to

"all of the elements of count[] I of the trial information" and "all of the elements of count II of the trial information."

Basquin stated in writing that he understood the plea agreement to be in exchange for his plea to the drug charge, the State would dismiss the burglary charge and recommend probation for two years and the suspension of fines, surcharges, and court costs. The prosecutor initialed the terms of the plea agreement. Basquin affirmed his understanding in writing of the maximum and minimum sentence for the drug charge and the enumerated rights he was forfeiting, including his right to a trial. Basquin marked that he understood "that the Court is not bound by the plea agreement and may sentence [him] up to the maximum sentence provided by law," but he also wrote "n/a" off to the side of that provision.

His written plea waived his right of allocution and his "right to a hearing in open court for [his] guilty plea and for sentencing." The written document requested that he be sentenced immediately. Basquin acknowledged in writing that he has "discussed all possible legal defenses with [his] attorney" and understood that by "pleading guilty to a felony [he] may lose [his] right to serve on a jury, vote, and own firearms" and "may also become ineligible to receive state and federal benefits." He affirmed in writing that he understood that he has "no absolute right to appeal a guilty plea" and that if he alleges "good cause and/or a defect in this plea proceeding," he has thirty days to appeal. Basquin acknowledged in writing:

> I understand that if I wish to challenge this plea of guilty, I must do so by filing a Motion in Arrest of Judgment at least five (5) days prior

to the Court imposing sentence, but no more than 45 days from today's date. I understand that by asking the Court to impose sentence immediately that I waive my right to challenge the plea of guilty which I have hereby entered.

Basquin appeared in person at the sentencing hearing on November 13. The district court found that "the plea was freely, voluntarily and intelligently made and that there was a factual basis for the plea." Basquin was found guilty of violating section 124.401(1)(*c*)(6) and was sentenced to a suspended ten-year prison sentence, suspended fines and surcharges, and informal probation for two years. The court found that Basquin was unable to reasonably pay category "B" restitution. The court considered the nature of the offense, the plea agreement, and his prior record. Basquin did not file a motion in arrest of judgment. On December 1, Basquin's counsel filed a notice of appeal.

On appeal, Basquin, through new counsel, argues the Iowa Supreme Court's COVID-19 supervisory orders authorizing written felony guilty pleas violated "precedent, due process, and separation of powers." The State argues Basquin lacks good cause to appeal under section 814.6(1)(*a*)(3) and our court has "the authority and duty to temporarily amend or suspend a rule of criminal procedure during a crisis" without violating due process or separation of powers. We retained the case.

**II. Standard of Review.**

"We review constitutional issues de novo." *Klouda v. Sixth Jud. Dist. Dep't of Corr. Servs.*, 642 N.W.2d 255, 260 (Iowa 2002). "We review challenges to plea proceedings for correction of errors at law." *State v. Weitzel*, 905 N.W.2d 397, 401 (Iowa 2017).

**III. Analysis.**

We begin our analysis with an overview of how our supervisory orders temporarily changed our traditional guilty plea procedure. We then review the State's argument that we lack jurisdiction under section 814.6(1)(*a*)(3) to hear this appeal. After concluding we have jurisdiction, we review our authority to issue supervisory orders during the COVID-19 pandemic and Basquin's separation of powers and due process claims. To the extent Basquin blames his lawyer for his guilty plea, his ineffective assistance of counsel claim must be presented in postconviction proceedings. *See* Iowa Code § 814.7; *State v. Tucker*, 959 N.W.2d 140, 152 (Iowa 2021) ("[T]he law merely diverts all claims of ineffective assistance of counsel to postconviction-relief proceedings and requires they be resolved there in the first instance.").

**A. Our Supervisory Orders.** Our rules of criminal procedure require guilty pleas to class "C" felonies to be accepted through in-person proceedings in open court with a face-to-face colloquy between the district court judge, defendant, and counsel. Iowa Rule of Criminal Procedure 2.8(2)(*b*) provides:

> The court may refuse to accept a plea of guilty, and shall not accept a plea of guilty without first determining that the plea is made voluntarily and intelligently and has a factual basis. *Before accepting a plea of guilty, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:*
>
> (1) The nature of the charge to which the plea is offered.
>
> (2) The mandatory minimum punishment, if any, and the maximum possible punishment provided by the statute defining the offense to which the plea is offered.

(3) That a criminal conviction, deferred judgment, or deferred sentence may affect a defendant's status under federal immigration laws.

(4) That the defendant has the right to be tried by a jury, and at trial has the right to assistance of counsel, the right to confront and cross-examine witnesses against the defendant, the right not to be compelled to incriminate oneself, and the right to present witnesses in the defendant's own behalf and to have compulsory process in securing their attendance.

(5) That if the defendant pleads guilty there will not be a further trial of any kind, so that by pleading guilty the defendant waives the right to a trial.

(Emphasis added.)

The court should also inquire if there is a plea deal and "[t]he terms of any plea agreement shall be disclosed." *Id.* r. 2.8(2)(*c*). We permit district courts to accept a written guilty plea for serious or aggravated misdemeanors if the defendant desires. *Id.* r. 2.8(2)(*b*) (last paragraph). We have held "that a written guilty plea to a felony could not 'serve as a substitute for a question the court is required to pose to the defendant directly.' " *State v. Loye*, 670 N.W.2d 141, 153 (Iowa 2003) (quoting *State v. Hook*, 623 N.W.2d 865, 870 (Iowa 2001) (en banc), *abrogated in part on other grounds by State v. Barnes*, 652 N.W.2d 466, 468 (Iowa 2002) (per curiam)); *see also State v. Finney*, 834 N.W.2d 46, 59 n.3 (Iowa 2013) (refusing to extend the written guilty plea practice to felonies "[b]ecause of the graver consequences resulting from a felony conviction").

On March 17, 2020, Governor Kim Reynolds declared a state of public health disaster emergency in response to the outbreak of the Novel Coronavirus 2019 (COVID-19). State of Iowa Exec. Dep't, *Proclamation of Disaster Emergency* (Mar. 17, 2020), https://governor.iowa.gov/sites/default

/files/documents/Public%20Health%20Proclamation%20-%202020.03.17.pdf [https://perma.cc/ZBZ4-QBNM]. The Governor recognized that the federal government[1] and international organizations had taken similar action. *Id.* at 1. Thousands of Iowans have died from the virus. COVID-19 in Iowa Summary Dashboard, https://coronavirus.iowa.gov (last visited Feb. 1, 2022) [https://perma.cc/A2H3-9HRX]. In response to the global COVID-19 pandemic, we issued multiple supervisory orders that "balanc[e] the need to take measures to reduce the spread of the virus with [the Iowa Judicial Branch's] commitment to conduct[] business as necessary." Iowa Sup. Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* 1 (May 22, 2020 [hereinafter May 2020 Supervisory Order]). We first permitted written guilty pleas in felony cases in March of 2020.[2] In a letter sent to all eight district court chief judges on April 9, 2020, the State Public Defender did not voice any criticism regarding the use of written guilty pleas in felony cases. To the contrary, he expressed appreciation for the court's protective

---

[1]The federal government responded to COVID-19 in the context of felony guilty pleas by enacting the Coronavirus Aid, Relief, and Economic Security Act, Pub. L. No. 116–136, § 15002(b)(2), 134 Stat. 281, 528–29 (2020). The statute provides for video or telephone conferencing to conduct plea or sentencing hearings if they "cannot be conducted in person without seriously jeopardizing public health and safety." *Id.* at § 15002(b)(2)(A), 134 Stat. at 529.

[2]*See* Iowa Sup. Ct. Supervisory Order, *In the Matter of Ongoing Preparation for Coronavirus/COVID-19 Impact on Court Services* (Mar. 14, 2020). We continued to permit written guilty pleas in felony cases for the remainder of 2020 and throughout 2021, and our amended December 6, 2021 supervisory order, effective January 1, 2022, allows written guilty pleas in nonforcible class "D" felony cases in 2022 until further notice. *See* Iowa Sup. Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* (Nov. 24, 2020); Iowa Sup. Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services and Processes Continued to January 1, 2022* (June 21, 2021); Iowa Sup. Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Court Services* (Dec. 6, 2021 (amended Dec. 8, 2021)).

measures, and after emphasizing the risks of person-to-person transmission, he announced a directive restricting public defenders from attending in-court proceedings:

> In fulfilling my role in these unique times, it is incumbent on me to take all necessary steps within my power to protect all employees of the Office of the State Public Defender, our clients, and the public at large. To this end, I am issuing a work directive to all public defender employees, effective on Monday, April 13th, 2020 to make every effort to avoid attending any in-person hearings until further notice from this office. . . . I am authorizing my public defender employees to challenge any order directing their attendance at an in-person hearing during the duration of this pandemic by certiorari, appeal, or any other legal means to avoid attendance at an in-person hearing. Ultimately, SPD employees will not be authorized to attend hearings in person without specific permission from myself or my first assistant Kurt Swaim.
>
> . . . .
>
> Since I have no supervisory authority over contract attorneys, the work directive will not explicitly apply to them. However, I intend to write a letter to the contract attorneys that I will do everything I am legally authorized to do to support their efforts to be safe from any in-person hearings.

Basquin entered his written guilty plea on November 12, 2020. Although the State Public Defender, in subsequent correspondences, had by then pulled back to some extent from his April 9 "work directive," the office remained opposed to in-person hearings "except in limited circumstances." Our governing supervisory order issued on May 22, 2020, provided: "Through December 31, 2020, district courts *may accept written guilty pleas in felony cases* in the same manner as in serious and aggravated misdemeanors cases. *See* Iowa R. Crim. P. 2.8(2)(*b*) (last paragraph)." May 2020 Supervisory Order, at 7 (emphasis added). This order was designed to "provide an up-to-date list of the measures now in

effect because of COVID-19 outbreak and their expected duration" and "provide a timetable for the resumption of more normal court operations." *Id.* at 1.

**B. Jurisdiction Under Section 814.6.** Iowa Code section 814.6(1)(*a*)(3) provides that defendants have a right to appeal "[a] final judgment of sentence, except . . . [a] conviction where the defendant has pled guilty" unless the defendant pleaded guilty to "a class 'A' felony or in a case where the defendant establishes good cause." The defendant has the burden to establish "good cause to pursue an appeal of [his] conviction based on a guilty plea." *State v. Treptow*, 960 N.W.2d 98, 108 (Iowa 2021) (alteration in original) (quoting *State v. Damme*, 944 N.W.2d 98, 104 (Iowa 2020)). " 'Good cause' in section 814.6 means a 'legally sufficient reason.' " *Id.* at 109 (quoting *State v. Boldon*, 954 N.W.2d 62, 69 (Iowa 2021)). "A legally sufficient reason to appeal as a matter of right is a reason that, at minimum, would allow a court to provide some relief on direct appeal." *Tucker*, 959 N.W.2d at 153.

We have not yet adjudicated the validity of written guilty pleas to felonies entered pursuant to our supervisory orders. Basquin's challenge to his guilty plea raises constitutional issues of first impression. Indeed, the State's routing statement urges our court to retain this appeal because it "poses a substantial constitutional question, issue of first-impression, issue of fundamental and urgent public importance, or question of enunciating or changing legal principles." We conclude Basquin has good cause to appeal, allowing us to decide his claims on the merits.

**C. Authority for Supervisory Orders.** We conclude our supervisory orders temporarily allowing written guilty pleas to felonies fall well within our court's constitutional and inherent powers, especially during a public health emergency caused by a global pandemic that shut down jury trials and severely limited in-person court operations. Our COVID-19 supervisory orders balanced the rights of defendants and public safety. Without written guilty pleas, many defendants would have languished in jail until in-person hearings resumed to normal levels. Furthermore, the State Public Defender also had instructed appointed counsel to avoid in-person hearings. Defendants have a right to a speedy disposition of their criminal cases. There are multiple rights at issue here. Basquin cites no appellate decision during the COVID-19 pandemic that holds written guilty pleas to felonies are unconstitutional.

We conclude that we had the constitutional authority to issue the supervisory orders that temporarily suspended our rules of criminal procedure governing guilty pleas. The Iowa Constitution vests judicial power with the "supreme court, district courts, and such other courts, inferior to the supreme court, as the general assembly may, from time to time, establish." Iowa Const. art. V, § 1. The "[j]udicial power vested in the courts by the Iowa Constitution is the power to decide and pronounce a judgment and carry it into effect," *Klouda*, 642 N.W.2d at 261, and "the power to construe and interpret the Constitution and laws, and to apply them and decide controversies," *State v. Thompson*, 954 N.W.2d 402, 410–11 (Iowa 2021) (quoting *Hutchins v. City of Des Moines*, 157 N.W. 881, 887 (Iowa 1916)). Just as sentencing is part of the judiciary's

power to "decide and pronounce a judgment and carry it into effect," so too is the guilty plea proceeding. *Klouda*, 642 N.W.2d at 261.

We recently reviewed our court's constitutional powers in *State v. Thompson.* "The constitutional duty of the judicial department is to exercise the judicial power to provide for the fair and impartial administration of justice." *Thompson*, 954 N.W.2d at 410. "The judicial department has several fonts of authority to regulate court practice and procedure in all Iowa courts." *Id.* at 411. The constitution grants us the ability to "exercise a supervisory and administrative control over all inferior judicial tribunals throughout the state." Iowa Const. art. V, § 4. "The grant of the power of supervision and administration implies a duty to exercise it. In fact, the language of the constitution[] is mandatory that we must do so. And necessarily this power must apply to something beyond the ordinary appellate procedure and correction of errors of law . . . ." *In re Judges of Mun. Ct.*, 130 N.W.2d 553, 554 (Iowa 1964) (per curiam). The constitution grants us "unlimited supervisory control over inferior tribunals throughout the state, and authority to issue all writs and process necessary to secure justice to parties." *Hutchins*, 157 N.W.2d at 889; *see also State v. Davis*, 493 N.W.2d 820, 822 (Iowa 1992) ("Iowa Rule of Criminal Procedure 54 and Iowa Rule of Civil Procedure 309 do not limit *our* article V constitutional power to grant discretionary review of decisions rendered by other judicial tribunals."). The constitution allows us to use our supervisory and administrative authority when necessary, which includes responding to a global pandemic.

Additionally, we have inherent, statutory, and common law authority to prescribe rules of practice for Iowa courts. "The judicial department possesses *inherent* authority to craft protocols and procedures in its courts." *Thompson*, 954 N.W.2d at 411; *see also Hammon v. Gilson*, 291 N.W. 448, 451–52 (Iowa 1940) (recognizing "that courts have the inherent power to prescribe such rules of practice and rules to regulate their proceedings, in order to expedite the trial of cases, and to keep their dockets clear, and to facilitate the administration of justice"). We have statutory authorization to "prescribe all rules of pleading, practice, evidence, and procedure, and the forms of process, writs, and notices, for all proceedings in all courts of this state, for the purposes of simplifying the proceedings and promoting the speedy determination of litigation upon its merits." Iowa Code § 602.4201(1); *see Thompson*, 954 N.W.2d at 411.

Certain rules, such as the rules of criminal procedure, are subject to the rulemaking process in section 602.4202, and permanent rule changes to those certain rules must be submitted to the legislative council before the rules can take effect. Iowa Code § 602.4201(3).[3] That process is inapplicable to temporary

---

[3]Basquin argues we lack statutory authority to temporarily alter a rule of criminal procedure through supervisory orders. We disagree. Iowa Code section 602.4202 requires a certain rulemaking procedure when we permanently alter certain specified court rules, including rules of criminal procedure, under our authority in section 602.4201. *See id.* § 602.4201(3). As the State correctly argues, neither provision prohibits us from "creating pilot projects, task forces, or temporary procedures" nor limits the amount of time we "may experiment with a rule or form before submitting it." Before COVID-19, we have used our supervisory and administrative authority to implement temporary procedures. *See, e.g.*, Iowa Sup. Ct. Supervisory Order, *In the Matter of Establishment of the Electronic Search Warrant Pilot Project* (Apr. 27, 2020); Iowa Sup. Ct. Supervisory Order, *In the Matter of the Establishment and Operation of the Informal Family Law Trial Pilot Project* (Feb. 14, 2017).

rule changes, and in any event, neither the legislative council nor the legislature has objected or sought to repeal any of our COVID-19 supervisory orders.

In addition, "the judicial department possesses *residual common law* authority to meet its 'independent constitutional and statutory responsibilities.'" *Thompson*, 954 N.W.2d at 411 (quoting *Iowa C.L. Union v. Critelli*, 244 N.W.2d 564, 569 (Iowa 1976) (en banc)). For example, "our cases have consistently recognized the inherent common-law power of the courts to adopt rules for the management of cases on their dockets in the absence of statute." *Critelli*, 244 N.W.2d at 568–69. "[A] contrary holding might leave the courts without rules of practice." *Id.* at 569. Indeed, for many years, district courts have conducted trials on the minutes of testimony without a permanent rule or statute authorizing that practice.

The Iowa Constitution also grants the legislature "authority to regulate the practice and procedure in all Iowa courts." *Thompson*, 954 N.W.2d at 411; *see also* Iowa Const. art. V, §§ 4 ("The supreme court shall have appellate jurisdiction . . . under such restrictions as the general assembly may, by law, prescribe . . . ."), 6 ("The district court shall . . . have jurisdiction in civil and criminal matters arising in their respective districts, in such manner as shall be prescribed by law."), 14 ("It shall be the duty of the general assembly to provide for the carrying into effect of this article, and to provide for a general system of practice in all the courts of this state."). "It is the legislative department's constitutional prerogative to establish a general system of practice in all Iowa courts so long as those restrictions and regulations do not impede the

immediate, necessary, efficient, or basic functioning of the appellate courts." *Thompson*, 954 N.W.2d at 418.

Given the legislature's power to regulate the courts, "[w]e may not 'change [statutory] terms under the guise of judicial construction.'" *Root v. Toney*, 841 N.W.2d 83, 89 (Iowa 2013) (second alteration in original) (quoting *Iowa Dep't of Transp. v. Soward*, 650 N.W.2d 569, 571 (Iowa 2002)); *see also* Iowa Code § 602.4202(4) ("If the general assembly enacts a bill changing a rule or form, the general assembly's enactment supersedes a conflicting provision in the rule or form as submitted by the supreme court."). In *Root v. Toney*, we concluded that "the time allowed to file a notice of appeal cannot be reduced without legislative approval" because the legislature had enacted Iowa Code section 4.1(34), providing for an extension of time to file an appeal. 841 N.W.2d at 89–90. In the instant case, the legislature has not enacted a statute prohibiting written guilty pleas to felonies. Thus, our constitutional, inherent, statutory, and common law authority is not limited in the context of written guilty pleas for felonies. *See Thompson*, 954 N.W.2d at 411.

For those reasons, we reject Basquin's claim that we lacked authority to issue the supervisory orders temporarily allowing written guilty pleas to felonies.

**D. Separation of Powers.** "The division of the powers of government into three different departments—legislative, executive, and judicial—lies at the very foundation of our constitutional system." *Thompson*, 954 N.W.2d at 410 (quoting *State v. Barker*, 89 N.W. 204, 208 (1902)). The separation of power doctrine is

designed to protect against tyranny. *Id.* Our constitution provides:

> The powers of the government of Iowa shall be divided into three separate departments—the legislative, the executive, and the judicial: and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted.

Iowa Const. art. III, Three Separate Departments, § 1. The doctrine is not rigid. *Klouda*, 642 N.W.2d at 260. "[S]ome acts can be properly entrusted to more than one branch of government, and some functions inevitably intersect." *Id.* (quoting *State v. Hoegh*, 632 N.W.2d 885, 889 (Iowa 2001)). The constitution has entrusted both the legislature and the judiciary with ensuring that the judicial branch functions and administers justice. *See, e.g.*, Iowa Const. art. V, §§ 4, 6, 14.

The separation of powers doctrine prohibits a department of the government "from exercising 'powers that are clearly forbidden' to it," "from exercising 'powers granted by the constitution to another branch,'" and from "impair[ing] another in the performance of its constitutional duties." *Thompson*, 954 N.W.2d at 410 (quoting *Klouda*, 642 N.W.2d at 260 (emphasis omitted)). "[E]ach department of government must be and remain independent if the constitutional safeguards are to be maintained." *Id.* (quoting *Webster Cnty. Bd. of Supervisors v. Flattery*, 268 N.W.2d 869, 873 (Iowa 1978) (en banc)).

To decide if the judiciary exercised forbidden powers or powers committed to another branch, "we first look to the words used by our framers to ascertain intent and the meaning of our constitution and to the common understanding of those words." *Id.* (quoting *Chiodo v. Section 43.24 Panel*, 846 N.W.2d 845, 851

(Iowa 2014)). Article V, section 4 of the Iowa Constitution grants the judiciary supervisory and administrative power, which necessarily "must apply to something beyond the ordinary appellate procedure and correction of errors of law." *In re Judges of Mun. Ct.*, 130 N.W.2d at 554.

Our COVID-19 supervisory orders providing for temporary procedural measures in response to a global pandemic fall well within this grant of constitutional authority dedicated to the judicial branch. We also can rely on our inherent, statutory, and common law authority, as discussed above, as a source of power for the COVID-19 supervisory orders. We likewise did not use any power granted exclusively to another branch of government.

> We do not think the constitutional assignment of a duty to the legislature to provide a general system of practice for the courts vests the power to adopt rules of practice in the legislature exclusively. Where the legislature has not acted, courts possess a residuum of inherent common-law power to adopt rules to enable them to meet their independent constitutional and statutory responsibilities. We find Article V, [section] 14, of the Constitution, read with the separation of powers clause, Article III, [section] 1, does not manifest a plain intention to abrogate the inherent common-law power of courts to adopt rules of practice.

*Critelli*, 244 N.W.2d at 569. The legislature has not attempted to countermand the supervisory orders at issue. Basquin's separation of powers argument fails.

**E. Due Process.** The Federal and Iowa Constitutions provide for a defendant's right to due process. U.S. Const. amend. V, XIV; Iowa Const. art. 1, § 9.[4] Pleas must be voluntary. *Weitzel*, 905 N.W.2d at 404; *see also State v.*

---

[4]In *Sothman v. State*, we recognized defendants have a right to a plea hearing in open court. 967 N.W.2d 512, 529 (Iowa 2021). A defendant can waive such requirement. *See id.* at 528–29. Basquin was informed of this right and waived this right by affirmatively writing his initials next to paragraph twenty-one of his written guilty plea, which reads:

*Meron*, 675 N.W.2d 537, 542 (Iowa 2004) ("A defendant waives a variety of constitutional rights by pleading guilty to a criminal offense, and it is fundamental that a plea of guilty is valid only if it is given voluntarily, knowingly, and intelligently.").

Departures from the in-person colloquy required under Iowa Rule of Criminal Procedure 2.8(2)(*b*) do not automatically render Basquin's plea involuntary. *McCarthy v. United States*, 394 U.S. 459, 464–65 (1969); *State v. Kirchoff*, 452 N.W.2d 802, 804 (Iowa 1990) (en banc). In *McCarthy v. United States*, the Supreme Court explained that the procedure embodied in the federal rule of criminal procedure governing guilty pleas "is designed to assist the district judge in making the constitutionally required determination that a defendant's guilty plea is truly voluntary." 394 U.S. at 465. It "is intended to produce a complete record at the time the plea is entered of the factors relevant to this voluntariness determination" and the more the procedure is followed, "the more it tends to discourage, or at least to enable more expeditious disposition of, the numerous and often frivolous post-conviction attacks on the constitutional validity of guilty pleas." *Id.*

In *Brainard v. State*, we concluded that "[b]y taking the few minutes required to engage in this colloquy, the trial judge can assure the defendant is on notice of the basic rights waived by his guilty plea and obviate the burden

---

I understand I have the right to a hearing in open court for my guilty plea and for sentencing and that if I were to have that hearing a court report would take a transcript of what was said. I am waiving my right to a hearing in open court for my guilty plea and sentencing.

and necessity upon later review of searching the entire record for evidence of that knowledge." 222 N.W.2d at 711, 717 (Iowa 1974) (en banc). In *State v. Kirchoff*, we applied those principles to our rules of criminal procedure:

> The purpose of rule 8(2)(b), as suggested by its first paragraph, is to ensure that guilty pleas are made voluntarily, intelligently, and with a factual basis. Strict compliance with the rule's literal language practically assures that a plea of guilty thereafter accepted is made voluntarily, intelligently, and with a factual basis. Nevertheless, the rule does not establish a litany that must be followed without variation before a guilty plea may be accepted. Substantial compliance with the rule is all that is required.

452 N.W.2d at 804. The rule helps ensure constitutional requirements for guilty pleas are satisfied. That does not mean the constitution forbids substituting written guilty pleas to felonies during a global pandemic. *See id.*; *see also Halliday v. United States*, 394 U.S. 831, 833 (1969) (per curiam) (declining to apply *McCarthy* retroactively in part because "of the large number of constitutionally valid convictions that may have been obtained without full compliance with [the federal rule of criminal procedure governing guilty pleas]"); *Brainard*, 222 N.W.2d at 717 (noting the requirement for trial judges to engage in a personal colloquy with the defendant at guilty plea proceedings is "not constitutionally mandated").

"We have indicated that 'the process due in each case is flexible depending on the particular circumstances.'" *In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021) (quoting *In re M.D.*, 921 N.W.2d 229, 235 (Iowa 2018)). We rejected a due process challenge to our COVID-19 supervisory order allowing telephonic testimony in proceedings to terminate parental rights and the juvenile court's denial of a parent's motion for a continuance until the hearing could be conducted in

person. *Id.* at 170–71. We agreed with the reasoning of a thorough, published opinion of our court of appeals that reached the same conclusion. *Id.* at 170 (citing *In re A.H.*, 950 N.W.2d 27, 39–41 (Iowa Ct. App. 2020)). In that decision, the court of appeals carefully balanced the competing interests, including the health risks of in-person hearings, the risk or error, and the cost of delayed permanency, in determining that due process requirements were met. *In re A.H.*, 950 N.W.2d at 33–41; *see also Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (setting forth the balancing test for procedural due process claims).

In balancing the competing interests here, Basquin's due process challenge fails. We give considerable weight to the governmental interest in safeguarding the public from the spread of contagious diseases. *See Beeks v. Dickinson County*, 108 N.W. 311, 312–13 (Iowa 1906) (rejecting tort claims against public officials who imposed a quarantine for smallpox). The State Public Defender supported shutting down in-person hearings and offered no criticism of our supervisory orders allowing written guilty pleas to felonies before Basquin's appeal. Written pleas avoided the considerable cost of delaying court cases until in-person proceedings could safely resume—a price paid most painfully by those who otherwise would have remained in jail. The risk of error is minimized by the detailed terms of the written guilty plea and the assistance of defense counsel.

We have long utilized written guilty pleas for misdemeanor offenses, and we have held the defendants can waive in writing the right to an in-person colloquy in open court. *See, e.g., Barnes*, 652 N.W.2d at 468. The expectation is

that defense counsel will carefully review the terms of the written plea agreement with the defendant to ensure the plea is knowing and voluntary and supported by a factual basis. The written plea agreement Basquin signed and initialed adequately covered the same points that would have been addressed orally during an in-person colloquy in open court.[5] We conclude Basquin's challenge to his guilty plea lacks merit.

Basquin's attorney reviewed the written guilty plea with him. Basquin argues he didn't understand it. To the extent he blames his lawyer, he makes a claim of ineffective assistance of counsel that he can only pursue in postconviction proceedings. *See* Iowa Code § 814.7; *Tucker*, 959 N.W.2d at 152.

**IV. Disposition.**

For those reasons, we affirm Basquin's judgment of conviction.

**AFFIRMED.**

---

[5]In Basquin's reply brief, he argues for the first time that the written plea was deficient in failing to specify that this was a specific-intent crime. We consider this argument waived. "We have repeatedly held we will not consider issues raised for the first time in a reply brief." *State v. Carroll*, 767 N.W.2d 638, 644 (Iowa 2009).